**INDEPENDENT SCHOOL DIST. OF CITY OF EL PASO v. CENTRAL EDUCATION AGENCY, et al.**

No. 10039.

Court of Civil Appeals of Texas. Austin.

March 5, 1952.

Rehearing Denied March 19, 1952.

Second Motion for Rehearing Denied April 9, 1952.

Jones, Hardie, Gramlbling & Howell, El Paso, J. C. Hinsley, Ralph W. Yarborough, Austin, for appellant.

Price Daniel, Atty. Gen., Charles D. Mathews, First Asst. Atty. Gen., Chester E. Ollison, Asst. Atty. Gen., by E. Jacobson and E. Wayne Thode, Asst. Attys. Gen., for appellee.

HUGHES, Justice.

This suit was brought by the Independent School District of the City of El Paso, Appellant, against the Central Education Agency of Texas,[1] J. W. Edgar, State Commissioner of Education and Robert S. Calvert, Comptroller of Public Accounts, in their official capacities only, Appellees, and is in the nature of a statutory appeal under Article 2922–19, Vernon's Ann.Civ. St.

Appellant sought a judgment establishing as part of the area included within its territorial limits those federally owned lands comprising the Fort Bliss Military Reservation in El Paso County by reason of two orders of the State Board of Education, one dated December 4, 1939, the other July 15, 1949, hereinafter more fully described, and requiring the State Commissioner of Education to consider such lands as a part of the El Paso District in calculating and determining the proper amount of local funds to be charged it under the pro-

visions of Section 5, Article 2922–16, V.A. C.S., toward the support of the Foundation School Program.

In a nonjury trial final judgment was rendered denying appellant any relief, the reasons therefor assigned therein being:

"The Court is of the opinion that Senate Bill 274, Acts 44th Leg., R.S. 1935, ch. 112, p. 299, under which the State Board of Education acted in issuing its orders of December 4, 1939, and July 15, 1949, purporting to attach, annex, and include the territory of the Fort Bliss Military Reservation in and to Plaintiff, The Independent School District of the City of El Paso, Texas, does not contain authority for the State Board of Education to annex, attach, or include the territory of a federal-owned military reservation to or in a school district for the purpose of the local fund provisions of Section 5 of Article VI of Senate Bill 116, Acts 51st Leg., R.S.1949, ch. 334, p. 625, or for any other purpose.

"The Court is of the opinion that the orders of the State Board of Education issued on December 4, 1939, and July 15, 1949, insofar as they purport to include, annex, or attach federal-owned land in the Fort Bliss Military Reservation as a part of, or in The Independent School District of the City of El Paso, Texas, are invalid.

"The Court is of the opinion that should said Senate Bill 274, Chapter 112, Acts 44th Legislature, 1935, be construed as allowing the annexation of the territory of a federal-owned military reservation to a school district, said Senate Bill 274, Chapter 112, Acts 44th Legislature, 1935, would, insofar as it is construed to give this authority, be void and unconstitutional, in violation of Section 35 of Article 111 of the Constitution of Texas, because it is the opinion of this court that the purpose of S. Bill 274 was to allow the scholastics on the reservation to share in the per capita apportionment of the State available school fund."

1. See Sec. 1, Art. 2654–1, V.A.C.S.

Senate Bill 274, referred to in the judgment, now Article 2756b, V.A.C.S., provides:

"Section 1. That the State Board of Education is hereby authorized and empowered to establish independent school districts upon any military reservations located within the State of Texas, upon such terms and conditions as may be agreed upon by the State Board of Education and the military authorities; and such districts may be entitled to enumerate its scholastics, to share in the State per capita apportionment, and such other privileges as are now granted to independent and common school districts.

"Provided, that the children who are entitled to attend the schools thus established, shall be those of the officers, warrant officers, soldiers and civilian employees residing or employed upon such reservations.

"And provided, that wherever in the opinion of the State Board of Education, the number of children resident upon any military reservation is not sufficient to warrant the establishment of a separate school district, that such military reservation shall for the purpose of this Act be included in any other school district under such regulations as the Board of Education may determine. Provided further, that the Board of Trustees of such district shall have the authority to transfer to any other independent or common school district maintaining adequate facilities and standards for elementary, junior or senior high schools, as set up by the State Department of Education and Southern Association, any school children who can not be provided for by the district of their residence.

"Sec. 2. Upon establishment of a school district on any military reservation as heretofore provided, the State Superintendent of Public Instruction shall appoint a board of three trustees for each district so created, to be selected from a list of civilians who are qualified under the general school laws of Texas, and who live or are employed upon the military reservation in which the school district is created, such list to be furnished by the commanding officer of said military reservation to the State Superintendent of Public Instruction. Said trustee shall hold office for two years, and until their successors are appointed and qualified.

"Provided, that in so far as practicable the teachers of said schools shall be selected from the residents of said school district who are qualified to teach in the public schools of the State of Texas; and

"Provided further, that each year the trustees of said districts shall take, and certify the census of eligible children within the scholastic ages; the scholastics so enumerated shall be entitled to participate in the annual apportionment of the State Available School Fund, and the amount of the available school fund to which the said district is entitled according to its scholastic population each year, shall be apportioned and paid directly to the said district. The laws pertaining to independent school districts shall govern said district so far as the same may be applicable, but the State Board of Education may make such special regulations and orders for the government of such districts as they may deem expedient."

The unanimous order of the State Board of Education of December 4, 1939, reads:

"Whereas, under Article 2756b of the 44th Legislature, 1935, the State Board of Education is authorized and empowered to establish independent school districts upon any military reservations located within the State of Texas, upon such terms as agreed upon by the State Board of Education and the military authorities, and

"Whereas, that wherever in the opinion of the State Board of Education the number of children resident upon any military reservation is not sufficient to warrant the establishment of a separate school district that such

military reservation shall for the purpose of this Act be included in any other school district under such regulations as the State Board of Education may determine, and

"Whereas, the Board of Trustees of the El Paso Independent School District of the City of El Paso, Texas, has made written application and filed the necessary papers with the State Board of Education, requesting the annexation of the Fort Bliss Military Reservation to the El Paso Independent School District for scholastic purposes, and

"Whereas, the State Board of Education finds that there is not a sufficient number of children on the Fort Bliss Military Reservation to establish a separate school district upon said reservation,

"Therefore, be it resolved, by the State Board of Education in session this the 4th day of December, A. D., 1939, upon the filing with the State Board of Education the written consent of the military authorities of the Fort Bliss Military Reservation, that said Reservation be attached to the independent school district of the City of El Paso, Texas, as a part of said school district.

"Be it further resolved that the children of legal scholastic age living in the Fort Bliss Military Reservation shall be entitled to be enumerated as scholastics of the State of Texas and share in the State Per Capital Apportionment and such other privileges as are now granted to independent and common school districts."

Concurrence in this resolution by the military authorities of Fort Bliss is evidenced by the following letter:

"State Board of Education,
Austin, Texas

"Gentlemen:

"This headquarters has been informed by Mr. Joseph G. Bennis, attorney for the Independent School District of the City of El Paso, that on or about Monday, December 4th, the State Board of Education adopted a resolution formally including the scholastics residing on the Fort Bliss Military Reservation in the El Paso Independent School District.

"You are advised, under the provisions of Art. 2756 b of Vernon, Texas Statutes, 1936, that the military authorities at Fort Bliss concur in the above action taken by the State Board of Education.

"For the Commanding General:

"Donald A Robinson,
Colonel, General Staff Corps,
Chief of Staff."

On July 11, 1949, the following telegram was sent by the Fort Bliss military authorities to the State Board of Education:

"The military authorities for the Fort Bliss Military Reservation adjoining the City of El Paso, Texas, desire to make clear their understanding that the reservation is a part of the school district of El Paso and their desire that the total area of the reservation as enlarged since 1939 when the State Board of Education annexed it to El Paso Independent School District be regarded as covered by the State Board action in 1939 and consequently the whole acreage of the present reservation is a part of the El Paso School District, with children residing on the reservation entitled to attend the city schools of El Paso as heretofore. Any action necessary by the State Board for this purpose is requested."

In accordance with the request contained in this telegram and upon petition of the Board of Trustees of the El Paso District the State Board of Education on July 15, 1949, unanimously adopted the following resolution:

"Whereas, on December 4, 1939, the State Board of Education took action as shown by the following excerpt from the Minutes of the State Board of Education of the meeting of De-

cember 4, 1939: \* \* \*." (Here follows the order of December 4, 1939 copied above.)

"Whereas, since such proceedings were had the Fort Bliss Military Reservation has been recognized as a part of the El Paso Independent School District of the City of El Paso, Texas; and

"Whereas, since such proceedings were had certain Federally-owned lands have been added to the Fort Bliss Military Reservation and some question has arisen as to whether such parts of the Fort Bliss Military Reservation are part of the El Paso Independent School District; and

"Whereas, it is the desire of the Military Authorities of the Fort Bliss Military Reservation that all parts of said Reservation be a part of the El Paso Independent School District in order that all scholastics residing on said Reservation may be enumerated in said El Paso Independent School District and attend the schools of said district, and the State Board of Education is of the opinion that such would be for the best interests of the scholastics residing on the Fort Bliss Military Reservation:

"Now, therefore, be it resolved and ordered, by the State Board of Education in session this, the 15th day of July, 1949, under the authority vested in this Board of Article 2756b, Vernon's Annotated Civil Statutes (Acts 1935, 44th Legislature, p. 299, Chapter 112), that all Federal owned lands in El Paso County, Texas, included in, composing, making up, or constituting the Fort Bliss Military Reservation be, and the same hereby are, included in the El Paso Independent School District of the City of El Paso, Texas, and same shall hereafter be a part of the El Paso Independent School District of the City of El Paso, Texas, for all purposes and that the children of scholastic age residing on said Fort Bliss Military Reservation shall be enumerated in the scholastic census as being in the El Paso Independent School District and shall be entitled to the same rights and privileges as other children of scholastic age residing within said El Paso Independent School District; and

"Be it further resolved and ordered that this order shall be immediately effective at such time as the Military Authorities of the Fort Bliss Military Reservation shall file their written acceptance of the terms hereof with the Secretary of State Board of Education."

On July 16, 1949, the military authorities at Fort Bliss sent the following letter to the State Board of Education:

"This letter is written to confirm the following telegram sent today:

" 'Concerning action taken by State Board of Education on 15 July with reference to federally-owned lands in El Paso County Texas the position of this headquarters stated in telegram to C. C. Chessar, President State Board of Education on 11 July is reaffirmed.'

"and is further evidence of the fact that the military authorities of Fort Bliss Military Reservation concur in the action taken by the State Board of Education and accept the terms of the order as made. The area of the present Fort Bliss Military Reservation is certified to by the acting post engineer, Captain James R. Ard, as shown in the attached photostatic copy."

The area of the Fort Bliss Military Reservation as shown by the certificate of the Post Engineer was 64,720.45 acres.

We digress here to point out the importance of the question as to whether the Fort Bliss area is or is not within the El Paso District.

Article 2922–16, V.A.C.S., provides that the Foundation School Program is to be financed by (1) an equalized local school district effort as defined in the Act, (2) distribution of the State and county available school fund upon the basis of the number of scholastics, and (3) direct State appropriation.

The total amount charged annually to all school districts is forty-five million dollars and each district is charged with its proportionate part of such sum according to its tax paying ability as determined by the State Commissioner of Education in conformity with a formula for calculating the economic index of the financial ability of each county in the State. The product of this index when multiplied by forty-five million dollars is regarded as the local funds available in each respective county toward the support of the Foundation School Program.

In determining the amount of local funds to be charged each school district in the State and county assessed valuation of all the property in the county subject to school district taxation for the last year is divided into the State and county assessed valuation of the district for the same year. The product of this per cent when multiplied by the entire amount charged to all districts in the county is the amount of local funds charged to such district provided, however: "* * * that in any district containing * * * Federal-owned military reservations * * * the amount assigned to such school district shall be reduced in the proportion that the area included in the above named classifications bears to the total area of the district. * * *" (3rd par. Sec. 5, Art. 2922-16.)

This deduction when applied to the Fort Bliss area as constituting a part of the El Paso District results in a benefit to such district in a sum stipulated to be $315,000.

The El Paso District has, since 1935, received and accepted the children residing upon Fort Bliss Military Reservation in its schools and has provided educational facilities for such children, more than 1100 of whom attended the El Paso District school during the 1950-51 scholastic year. It is anticipated that from new housing being constructed on the reservation that an additional 1200 scholastics will enter the El Paso District schools.

The trial court found that the Fort Bliss area lies within the boundaries of other

school districts even though not any of the children who reside on the reservation attend any of the schools in such districts and neither the Fort Bliss authorities nor the State Board of Education has consented or agreed to such inclusion.

We recite as relatively unimportant the following facts:

(1) The County Tax Assessor-Collector of each county is, under Section 5, Article 2922-16, required to certify to the State Commissioner of Education the "total area of each school district" within the county and that such officer of El Paso County has made conflicting certificates concerning the inclusion of the Fort Bliss area in the El Paso District. (2) The school districts of Ysleta, Smelter, Socorro, Cooley and Winkler, in which districts the Fort Bliss area formerly lay, have since 1939 included such area within the respective districts in the issuance of school district bonds. (3) The Supreme Court of Texas on October 5, 1949, overruled a motion for leave to file a Petition for Writ of Mandamus made by the El Paso District.[2]

While appellant has six primary and fourteen secondary points we believe that the substance of this case is contained in appellees' two Reply Points, the determination of which will end the controversy. These points are:

"Point I.

"Senate Bill 274 does not authorize the transfer of the territory of a military reservation for local fund credit purposes and hence the actions of the State Board of Education in 1939 and 1949, if construed as transferring the territory of Fort Bliss Military Reservation for all purposes, is beyond the scope of the statutory authority and ineffective."

"Point II

"If Senate Bill 274 be construed as giving the authority to transfer the territory of a federally-owned military reservation it is unconstitutional, be-

2. We consider this unimportant because the respondent, Comptroller Calvert, challenged the jurisdiction of the Court

on the ground that questions of fact were presented.

ing in violation of Section 35 of Article III, Constitution of Texas."

We will first dispose of the constitutional questions raised by the second point.

Section 35 of Article III of the Texas Constitution, Vernon's Ann.St.Const. provides:

"No bill, (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed."

The caption of Senate Bill 274 reads:

"An Act authorizing the State Board of Education to establish Independent School Districts upon any military reservations located within the State of Texas, upon such terms and conditions which may be agreed upon by the State Board of Education, and the military authorities; provided such districts may be entitled to enumerate its scholastics, to share in the State per capita apportionment; providing what children may attend such schools; further provided that the children of such military reservations may be included in other school districts; providing that such children may be transferred to other schools; providing that the State Superintendent of Public Instruction appoint a Board of three trustees for each district so created to be selected from a list of civilians, who are qualified under the general school laws of Texas, who are employed upon the military reservation, providing for the furnishing of a list of such civilian employees, and the term for which such trustee be elected, and providing for the election of school trustees; provided that census be taken of such children within the scholastic age of such district so as to determine the annual apportionment of the available school fund and amount to which such district is entitled, and providing for the manner of paying such fund; further providing that the general laws pertaining to independent school districts be applicable; and further providing the State Board of Education may make special regulations and orders for the government of such districts as it may deem expedient; and all other laws in conflict herewith are hereby expressly repealed, and declaring an emergency."

■ The well established rule is that liberal construction will be indulged in order to hold that the title of an Act conforms to the requirements of the Constitution. Gulf Ins. Co. v. James, 143 Tex. 424, 185 S.W.2d 966.

■ If the title of an Act gives fair notice of the subject matter of the legislation and the general or ultimate object of the bill it is sufficient. 39 Tex.Jur. p. 96, et seq.

Appellees contend that to "establish" an independent school district upon a military reservation does not mean that the reservation can be included in another school district, saying that the word establish means to "create."

The word "create" has this meaning: "to cause to be, or to produce, by fiat or by mental, moral, or legal action; as: To invest with a new form, office or character; to constitute by an act of law or sovereignty." Webster's International Dictionary, 2nd Edition.

■ When the United States Government acquired title to the Fort Bliss lands for military purposes it did so with unrestricted constitutional and statutory consent of the State of Texas. Section 34, Art. XVI, Tex.Const.; Art. 5242, V.A. C.S. Thereafter exclusive jurisdiction over these lands was vested in the Federal Government. Standard Oil Co. of California v. People of State of California, 291 U.S. 242, 54 S.Ct. 381, 78 L.Ed. 775.

In an opinion of Attorney General C. M. Cureton signed by Wallace Hawkins, Assistant Attorney General, of date March 2, 1921, it is said:

"The effect of ceding such territory to the Federal government has been said 'to detach and set off from the state such territory which becomes subject to exclusive jurisdiction of another power as formed[3] to the state so ceding as the territory exclusively within another state.' [State v. Willett, 117 Tenn. 334] 97 S.W. 301.

"From the above statements you will see that the State of Texas has lost its legislative jurisdiction for school purposes over a military reservation owned by the United States government and that our various statutes regulating school affairs generally have been superseded in such territory by such provisions as the Congress of the United States may make. This being true, of course there can be no public school within the meaning of our statutes and the Constitution in such district which will justify the expenditure of various public school funds which the State has provided.

"We would suggest, however, that the question of maintaining a school on such reservation for the children of the residents thereon should more properly be taken up with the Federal government through the properly designated officials."

■ It follows that after acquisition of these lands by the Federal Government that they, for all practical purposes, ceased to be a part of any school district. Their inclusion in the El Paso district by the Board under authority of Senate Bill 274 certainly, it seems to us, was the establishment or creation of a district upon a military reservation where, to all intents and purposes, no school district then existed.

■ We believe the word "establish" as used in the caption of the Act broad enough to encompass creation of a school district upon a military reservation as part of another school district.

This construction is aided by the notice given in the caption of the Act that "the general laws pertaining to independent school districts (shall) be applicable". These general laws provide for the detachment of territory from one district and for its annexation to another.

The caption also gives notice that the "children of such military reservations may be included in other school districts". This necessarily means the inclusion of territory where the children reside and not the transfer of children to other schools because the caption gives separate notice that "such children may be transferred to other schools".

■ Such districts are quasi public or municipal corporations, deriving their powers by delegation from the State and are erected and employed for the purpose of administering the State's systems of public schools. 37 Tex.Jur. p. 864–5.

School districts and children simply do not mix. They are of a different specie. Children may live in a district, attend school in a district but they are incapable of being "included" in a district. Unless the words "children of such military reservations may be included in other school districts" give reasonable notice that the military area may be included in other school districts then the words are entirely without meaning.

■ We believe the following well settled rules are also applicable:

" 'None of the provisions of a statute should be regarded as unconstitutional when they relate, directly or indirectly, to the same subject, have a mutual connection, and are not foreign to the subject expressed in the title.' In other words, an act will be upheld as against a contention that it embraces two or more subjects, if its provisions are fairly and legitimately within the general object or subject mentioned in the title, or are 'germane' thereto, 'in any degree.'

"There may be included in an act any provision which may be considered, by fair intendment, as connected with, an incidental, germane or subsidiary to, the main subject involved." 39 Tex. Jur. p. 88–9.

3. [Foreign?]

"Incorporation in the body of an act of the means by which its object may be accomplished does not render the act obnoxious to the constitutional inhibition against bills containing more than one subject. Accordingly an act with one leading subject, which is expressed in its title, may contain appropriate provisions designed or tending to accomplish, effectuate or enforce the general object or purpose of the law. When the title expresses the main subject dealt with in the act, it embraces any lawful means for the accomplishment of the legislative object. It is immaterial that such subsidiary provisions are not expressly mentioned in the title, if they are legitimately connected with the subject expressed. In other words, any provision calculated to carry into effect the declared object of an act is unobjectionable, although not specially indicated in the title." 39 Tex.Jur. p. 90–1.

■ The main object and purpose of Senate Bill 274, as expressed in the caption, was to establish school districts upon military reservations upon terms agreeable to the Board and military authorities. This purpose could be achieved by making such reservations separate districts; it could also be accomplished by including the reservations in other districts. These are but means of carrying out the general legislative objective and it is not required that they be specifically expressed in the caption.

■ Even if the caption of the Act be construed as expressing only one method of accomplishing its purpose, this does not preclude the body of the Act from providing other methods, since "it has been definitely decided that titles to bills are not subject to the maxim that the expression of one thing is the exclusion of another." Consolidated Underwriters v. Kirby Lbr. Co., Tex.Com.App., 267 S.W. 703, 705.

Our conclusion is that the caption of Senate Bill 274 is not defective.

We do not understand appellees to seriously contend that the 1939 and 1949 orders of the Board of Education are not, if valid, sufficient to incorporate the Fort Bliss Reservation within the El Paso district. Rather it is their position that Senate Bill 274, the only statute involved, did not authorize the Board of Education to include any or all of the reservation territory within the El Paso District even with the consent of the military authorities and the district.

Stated affirmatively appellees construe Senate Bill 274 as limited to (1) authorizing the establishment and control of a separate school district wholly upon a military reservation or (2) authorizing the enumeration of military reservation scholastics for the purpose of sharing in the available school fund although they may attend school in a nonmilitary school district.

In 1933 the Legislature, for the first time, enacted a law[4] authorizing the State Board of Education to create and establish school districts at military reservations in this State upon such terms as might be agreed upon between the Board and the United States War Department. The statute provided that "The territorial limits of such district shall be coextensive with the property lines of the military reservation." The benefits of this Act was limited to children who resided upon the reservation and attended its schools.

At least two major changes were wrought by the 1935 law (S.B. 274) which superseded the Act of 1933. The benefits of the Act were extended to children of military personnel and civilian employees "residing or employed upon such reservations", even though the children attended schools other than those located on the reservation, and the provisions of the old law relating to boundaries of the district were deleted. This deletion coupled with the following express provision of Senate Bill 274 leave no room for doubting the intention of the Legislature in passing the law, and, in our opinion, leave no room for its construction.

"And provided, that wherever in the opinion of the State Board of Education, the number of children resident

4. Acts 43rd Leg., 1st Called Sess. p. 136.

upon any military reservation is not sufficient to warrant the establishment of a separate school district, that such military reservation shall for the purpose of this Act be included in any other school district under such regulations as the Board of Education may determine."

Some of the most able exponents of our school laws were members of the State Board of Education in 1939 and 1949 when the orders in question were adopted. Their unanimous action in each instance and the wording of such orders indicate their full and complete understanding of the law as it is plainly written. These facts as well as similar unfettered interpretation by the military and local school authorities has made our footing here seem doubly sure.[5]

We, therefore, hold that the Board of Education had legal authority, under this record, to include the Fort Bliss Military Reservation within the El Paso Independent School District and that its orders were effective for such purpose.

We also hold that the words "for the purpose of this Act" refer not only to the enumeration of military reservation scholastics and the corresponding right to share in the State per capita apportionment of the available school fund but also to "such other privileges as are now granted to independent and common school districts" since Section I of the Act so states.

These "other privileges" include benefits derived from military reservations being included within a school district as provided in Section 5 of Article 2922–16, supra.

It is suggested that the decision which we have reached will result in an unjust enrichment of the El Paso schools. If so, the reward will be to the authorities who received and educated these school orphans rather than to those districts which did nothing in this regard.

The judgment of the trial court is reversed and judgment is here rendered in behalf of appellant establishing the Fort Bliss Military Reservation as a part of the El Paso Independent School District and decreeing its right to receive an additional $315,000.00 for the fiscal school year 1950–1 from the Foundation School Fund and that contrary orders of the State Board of Education be and they are hereby declared null and void.

Reversed and rendered.

#### On Motion for Rehearing.

Appellees have expressed grave concern over the effect of our decision herein upon other school districts which have been allowed credit for federal-owned forestry land and federal-owned Indian reservations under Section 5, Article 2922–16 as being districts "containing" such character of lands. Appellees say that "it is proper now for this Court to consider the consequences of its holding to the effect that when Texas land becomes a part of a Federal Government reservation it is no longer *contained* in any school district."

We did not make the holding attributed to us and were not called upon to do so because no such question is presented in this case.

> "We find nothing in Section 1 of the Act which would entitle children of persons employed on the Fort Sam Houston Military Reservation but residing in the Los Angeles Heights District to attend the schools of the San Antonio Independent School District where such reservation has been attached to and made a part of the San Antonio Independent School District as distinguished from the creation or establishment of separate independent district on the military reservation."

5. The Attorney General in opinion No. 0–2027, dated March 9, 1940, in construing Art. 2756b (S.B. 274) said:

"The Board of Education, however, according to your letter, did not establish or create a school district on the Fort Sam Houston Military Reservation, but acted upon another provision of the Act. Apparently being of the opinion that the number of children resident upon the military reservation was not sufficient to warrant the establishment of a separate school district, the territory of the military reservation was included in the San Antonio Independent School District. * * *

608

Appellees' fears are based upon this paragraph of our opinion:

"It follows that after acquisition of these lands by the Federal Government that they, for all practical purposes, ceased to be a part of any school district. Their inclusion in the El Paso district by the Board under authority of Senate Bill 274 certainly, it seems to us, was the establishment or creation of a district upon a military reservation where, to all intents and purposes, no school district then existed."

What we held there seems clear although what we said, by way of argument, may not be. We will amplify and explain.

 The idea which we intended to convey by the language used was that lands comprising a military reservation, owned by and under the complete jurisdiction of the Federal Government and which could not be taxed by the State or any of its political subdivisions and upon which, prior to Senate Bill 274, schools could not be built or operated at State expense, could not properly be considered as being a component working part of a school district, a State agency created and employed for the purpose of administering the State system of public schools. 37 Tex.Jur. p. 864. The Legislature has expressly stated:

"It is hereby declared to be the intention of the Legislature that all property subject to school district taxation within the State of Texas be included within the limits of a school district * * *." Art. 2922–18, V.A.C.S.

This does not exclude tax exempt property from being contained in a school district as contemplated by Section 5, Article 2922–16, but it does illustrate the thought which we are endeavoring to express that school districts are live realities with burdens, responsibilities and duties which are not shared by politically dormant nontaxable federal-owned lands.

We did not say nor did we intend to say that, geographically speaking, a military reservation or other federal-owned lands could not be "contained" within a school district. They may be so contained just as Fort Bliss may continue to be contained within El Paso County and within the State of Texas.

Furthermore we have no doubt but that for Senate Bill 274 and the actions of the State Board of Education and the military authorities thereunder that the Fort Bliss Reservation would now be held to be contained within the districts in which it formerly lay:

 We fully agree with appellees that the purpose of Section 5 of Article 2922–16 was to equalize the financial burden of school districts by making allowance for tax exempt property contained within the districts. This sound principle of tax equalization should be extended and not restricted and we feel certain that the courts will not interfere with application of this statute as intended by the Legislature.

The motion is overruled.