CENTRAL EDUCATION AGENCY ET AL V. THE
INDEPENDENT SCHOOL DISTRICT OF
THE CITY OF EL PASO, TEXAS.

No. A-3666. Decided January 14, 1953.
Rehearing overruled February 11, 1953.
(254 S. W. 2d Series, 357)

*Price Daniel,* Attorney General, *Charles D. Mathews, Chester E. Ollison* and *E. Jacobson,* Assistant Attorneys General, for petitioner.

The Court of Civil Appeals erred in holding that the act authorized the transfer of a military reservation from one school district to another for local credit purposes; that it erred in holding that resolution of the State Board of Education, passed several years ago, were effective to make such change; and in holding that said Act was constitutional under the caption provision of Section 35 of Article 3 of the Constitution when the body of the act is construed as permitting the taking of territory from one school district and transferring it to another. Buchanan v. Girvin, 142 Texas 134, 176 S. W. 2d 279; Southwestern Broadcasting Co. v. Oil Center Broadcasting Co. 210 S. W. 2d 230; Arnold v. Leonard, 114 Texas 535, 273 S.W. 799.

*Jones, Hardie, Grambling & Howell,* and *A. R. Grambling,* all of El Paso, *Ralph W. Yarborough* and *J. C. Hinsley,* both of Austin, for respondent.

In response to contention of petitioner, respondent cites:— Fenet v. McCuiston, 105 Texas 299, 147 S. W. 867; State v. Praetorians, 143 Texas 565, 186 S.W. 2d 973; Johnson v. Martin, 75 Texas 33, 12 S.W. 321.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

This suit involves the construction of Article 2756b, Vernon's Annotated Civil Statutes, hereinafter referred to as Senate Bill 274, and Section 5, Article 2922-16, Vernon's Annotated Civil Statutes, (a part of the popularly denominated Gilmer-Aiken Act). Specifically, it was brought by the School District against the Education Agency to compel the Agency to consider the area of the Fort Bliss Military Reservation as part of the School District in calculating and determining the amount of local funds to be charged the School District under Section 16 of Article 2922, Vernon's Annotated Civil Statutes.

In 1935 the Legislature passed Senate Bill 274, Acts 44th Leg., Ch. 112, p. 299, authorizing and empowering the State Board of Education to establish independent school districts upon any military reservation located within the State of Texas. The pertinent provisions of said Act are as follows:

"Section 1. That the State Board of Education is hereby auth-

orized and empowered to establish independent school districts upon any military reservations, located within the State of Texas upon such terms and conditions as may be agreed upon by the State Board of Education and the military authorities; and such districts may be entitled to enumerate its scholastics to share in the State per capita apportionment, and such other privileges as are now granted to independent and common school districts.

\*   \*   \*

"And provided, that wherever in the opinion of the State Board of Education, the number of children resident upon any military reservation is not sufficient to warrant the establishment of a separate school district, *that such military reservation shall for the purpose of this Act be included in any other school district under such regulations as the Board of Education may determine.* Provided further, that the Board of Trustees of such district shall have the authority to transfer to any other independent or common school district maintaining adequate facilities and standards for elementary, junior or senior high schools as set up by the State Department of Education and Southern Association, any school children who can not be provided for by the district of their residence.

\*   \*   \*

"\* \* \* The laws pertaining to independent school districts shall govern said district so far as the same may be applicable, but the State Board of Education may make such special regulations and orders for the government of such districts as they may deem expedient." (Emphasis added).

By a unanimous order entered December 4, 1939, the State Board of Education attached the Fort Bliss Military Reservation to the Independent School District of the City of El Paso, Texas, "as a part of said school district; upon filing of written consent of the Military Authorities with the Board". The order makes no mention of a transfer of children to another district, nor to the "inclusion" of children in another district. Paragraph One of the order recites the power of the State Board of Education to establish independent school districts upon any military reservation upon terms agreed upon between the Board and the military authorities; Paragraph Two recites the power of the Board to *include the military reservation in any other school district,* when, in the opinion of the Board, there are not a sufficient number of children resident upon the military reservation to warrant the establishment of a separate district upon the reser-

vation; Paragraph Three recites that the trustees of the El Paso Independent School District have made written application requesting the annexation of the military reservation; Paragraph Four is a finding by the Board that there are not a sufficient number of children residing upon the reservation to establish a separate district; Paragraph Five recites that upon the filing of written consent of the military authorities with the Board, "that said Reservation *be attached* to the independent school district of the City of El Paso, Texas, as a part of said school district," and Paragraph Six provides:

"BE IT FURTHER RESOLVED that the children of legal scholastic age living in the Fort Bliss Military Reservation shall be entitled to be enumerated as scholastics of the State of Texas and share in the State Per Capita Apportionment *and such other priviliges as are now granted to independent and common school districts.*" (Emphasis added).

The Commanding General of Fort Bliss, at the time, immediately consented and concurred in such action by the Board. At that time Fort Bliss Military Reservation contained an area of 8.98 square miles. No objection to this order, nor appeal therefrom, was taken by any interested party. On July 15, 1949, in response to a telegram sent the State Board by the Fort Bliss Military authorities, the State Board of Education unanimously adopted a resolution which set out in full its order of December 4, 1939, and provided, among other things, as follows:

"WHEREAS, since such proceedings were had the Fort Bliss Military Reservation has been recognized as a part of the El Paso Independent School District of the City of El Paso, Texas;

\* \* \*

"NOW, THEREFORE, BE IT RESOLVED AND ORDERED, by the State Board of Education in session this, the 15th day of July, 1949, under the authority vested in this Board by Article 2756b, Vernon's Annotated Civil Statutes (Acts 1935, 44th Legislature, p. 299, Chapter 112) that all Federal owned lands in El Paso County, Texas, included in, composing, making up, or constituting the Fort Bliss Military Reservation be, and the same hereby are, included in the El Paso Independent School District of the City of El Paso, Texas, and same shall hereafter be a part of the El Paso Independent School District of the City of El Paso, Texas, *for all purposes* and that the children of scholastic age residing on said Fort Bliss Military Reservation shall be enumerated in the scholastic census as being in the El Paso Independent School District and shall be entitled to the

same rights and privileges as other children of scholastic age residing within said El Paso Independent School District; * * *" (Emphasis added).

This resolution provided it was to be effective when Fort Bliss Military Authorities filed their written acceptance of the terms, with the Secretary of State Board of Education. The Fort Bliss Military Authorities filed this written consent July 16, 1949, and attached thereto a plat prepared by the Post Engineer showing the military reservation to contain 64,720.45 acres, or approximately 101 square miles.

At the time the Federal government enlarged the area of the Fort Bliss Military Reservation, the added area was a part of various school districts in El Paso County, other than El Paso Independent School District. The taking over of this area by the Federal government did not remove such area from the respective school districts, nor did it serve to change the boundaries of these districts. It is true that the state and all of its subdivisions lost all power to tax or control the area and the property situated thereon, except as may be agreed upon by the State and Federal authorities. But for the two orders passed by the State Board of Education attaching and including such area to the El Paso Independent School District, the area would have remained in, and as a part of, those other school districts to which it belonged at the time of the taking over of such area by the Federal government.

In determining the amount of the local funds to be charged to a school district to finance the Foundation School Program under the Gilmer-Aiken Act, a credit is provided for in Article 2922-16, as follows: "in any district containing * * * Federal owned military reservations * * * the amount assigned to such school district shall be reduced in the proportion that the area included in the above-named classifications bears to the total area in the district * * *." If the orders of the State Board of Education, as above set out, are valid and binding and all of Fort Bliss is included in the El Paso Independent School District, the School District will have a credit of $315,000.00 on its part of the Foundation School Program. The State Commissioner of Education, the State Comptroller and the Central Education Agency, refused to allow this credit, and this litigation resulted. The trial court held the order void and ineffective to make the military reservation a part of the School District for the purpose of computing the charge because (a) the State

Board of Education had no authority to enter such an order, and (b) Senate Bill 274 was invalid in so far as it attempted to confer such power on the State Board of Education, the caption of the Act not containing such power. On appeal the Court of Civil Appeals at Austin reversed the judgment of the trial court, and rendered judgment for the School District. 247 S.W. 2d 597. The Central Education Agency, et al applied for and was granted a writ of error to review such judgment.

Petitioners assign three points of error and we will discuss these under only two headings as these two points control this cause.

First, it is contended that Senate Bill 274 did not authorize the State Board of Education to transfer territory of a military reservation from one school district to another for local credit purposes. Under this point it is contended that the Senate Bill only authorizes the State Board of Education to transfer children residing upon a military reservation to another school district where .a separate school district is not created on such reservation, and does not authorize a transfer of territoy; therefore, the credit provision of Article 2922-16, which is based upon area, does not apply.

■ The Act specifically states "* * * wherever in the opinion of the State Board of Education, the number of children resident upon any military reservation is not sufficient to warrant the establishment of a separate school district, (as has been provided for in the first paragraph of this same Section 1 of the Act) that such military reservation shall for the purpose of this Act be included in any other school district under such regulations as the Board of Education may determine." This language is clear, simple and plain. It gives the State Board of Education power to include the military reservation in another school district. It does not say *"may"* include the children residing on such military reservation in another school district, but says the military reservation *"shall"* be included in any other school district. Under the State Constitution the Legislature has the power to provide for the formation of school districts by general law. Live Oak County Board of School Trustees v. North Common School Dist., Tex. Civ. App., 195 S.W. 2d 436, affirmed, 145 Texas 251, 199 S.W. 2d 764; 37 Tex. Jur. 865; Section 3, Article VII, State Constitution. Senate Bill 274 is a general law and not a special law. No contention is made that it is a special or local law. Where a statute is clear and unambiguous it will be

enforced according to its words. Anderson v. Penix, 138 Texas 596, 161 S. W. 2d 455(2); Decker v. Williams, Tex. Civ. App., 215 S.W. 2d 679, writ refused; 39 Tex. Jur. 163, et seq., 168. We can find no ambiguity in Senate Bill 274, and therefore we hold that the State Board of Education did have the power to include the Fort Bliss Military Reservation in the El Paso Independent School District—unless the Act be unconstitutional as later discussed. Also we hold that under the clear provisions of the Act when such territory was included or attached to the Independent School District the enlarged district was entitled to the benefits of all "laws pertaining to independent school districts", including the privileges and responsibilities placed upon independent districts by virtue of all the provisions of the Gilmer-Aiken Act. To hold in accordance with the contention of petitioners that it is only the children on the reservation that can be included in another school district, and not the territory of the reservation in which these children reside; and further to hold that the sole and only purpose of Senate Bill 274 (Art. 2756b) is to permit these scholastics to be enumerated and to receive the per capita apportionment from the State school funds, would be to read into the Act words and meaning not expressed by the Legislature. The Legislature said in the Act the district provided for "may be entitled to enumerate its scholastics, * * * and share in the State Per Capital Apportionment and such other privileges as are now granted to independent and common school districts." Again the Act states: "The laws pertaining to independent school districts shall govern said district so far as same may be applicable, etc. etc." To uphold petitioners' contention would be to deny to those children residing upon military reservations the benefit of free transportation, the Foundation School Program, and all other benefits of the Gilmer-Aiken Act in its entirety. We can find no basis for such holding and we believe that such holding would be contrary to the purpose of the Legislature in passing Senate Bill 274. It is further contended that to permit the El Paso Independent School District to receive this credit "would enrich the El Paso Independent School District to the injury of the other school districts of Texas." That contention is unsound because the Legislature has provided for a credit on the local contribution for "Federal-owned military reservations", and this area will receive that credit, so the other school districts of Texas will be no worse off if El Paso Independent School District has all the credit, or the credit is divided between El Paso and the other school districts of El Paso County, Texas. It is not the duty of the court to write the laws of our state, but the proper

function of the courts is to enforce the laws as made by the Legislature. Simmons v. Arnim, 110 Texas 309, 220 S.W. 66, 70; Texas Highway Commisison v. El Paso Building & Construction Trades Council, 149 Texas 457, 234 S. W. 2d 857, 863.

■ It is next contended by petitioners that if the Act gives the State Board of Education power to transfer military reservations from one school district to another school district, then the Act is void as violating Section 35 of Article III of the Texas Constitution. It is claimed the caption does not state such power and only confers the power to establish a school district wholly on a military reservation, and to include the "children" of such military district in another school district, but does not give any power to include the area of a military reservation as part of another school district.

"The rule is universal that the courts will not declare an act of the Legislature unconstitutional, unless such infirmity and vice clearly appears. Indeed this rule is necessary, and evidences that respectful regard in which the judicial should hold the legislative department of our government". Dendy v. Wilson, 142 Texas 460, 179 S.W. 2d 269, 277, 151 A. L. R. 1217; Koy v. Schneider, 110 Texas 369, 218 S.W. 479, 221 S.W. 880; Cooley on Const. Lim., 8th Ed., pp. 371, 372; Smith v. Patterson, 111 Texas 535, 242 S.W. 749, 750.

"In order to strike down any provision of this Act the Court must be able to point to some specific section of the Constitution which condemns it. The principle is so well established as to call for the citation of no authority that any bill not clearly inhibited by the State Constitution or the higher law of the Federal Constitution may be enacted into a valid law by the Legislature". Jordan v. Crudgington, 149 Texas 237, 231 S.W. 2d 641, 645(5).

The caption of Senate Bill 274 is as follows:

"An Act authorizing the State Board of Education to establish Independent School Districts upon any military reservations located within the State of Texas, upon such terms and conditions which may be agreed upon by the State Board of Education, and the military authorities; provided such districts may be entitled to enumerate its scholastics, to share in the State per capita apportionment; providing what children may attend such schools; further provided that the children of such military reservations may be included in other school districts; provid-

ing that such children may be transferred to other schools; providing that the State Superintendent of Public Instruction appoint a Board of three trustees for each district so created to be selected from a list of civilians, who are qualified under the general school laws of Texas, who are employed upon the military reservation, providing for the furnishing of a list of such civilian employees, and the term for which such trustee be elected, and providing for the election of school trustees; provided that census be taken of such children within the scholastic age of such district so as to determine the annual apportionment of the available school fund and amount to which such district is entitled; and providing for the manner of paying such fund; further providing that the general laws pertaining to independent school districts be applicable; and further providing the State Board of Education may make special regulations and orders for the government of such districts as it may deem expedient; and all other laws in conflict herewith are hereby expressly repealed, and declaring an emergency."

In discussing Section 35, Article III of our State Constitution and the prior provision, Justice Bonner in Stone v. Brown, 54 Texas 330, 343, states the true rule to be that "none of the provisions of a statute should be regarded as unconstitutional where they relate, directly or indirectly, to the same subject, have a mutual connection, and are not foreign to the subject expressed in the title. So long as the subjects are of the same nature and come ligitimately under one general denomination or object, we cannot say that the act is unconstitutional." The courts of this state have uniformly held that Section 35 of Article III should be given a liberal and not a strict construction. Consolidated Underwriters v. Kirby Lumber Co., Tex. Com. App., 267 S.W. 703; State v. Parker, 61 Texas 265; Gunter v. Texas, etc. Co., 82 Texas 496, 17 S.W. 840; Bitter v. Bexar County, Tex. Com. App., 11 S.W. 2d 163; Doeppenschmidt v. International & G. N. R. Co., 100 Texas 532, 101 S.W. 1080; Dellinger v. State, 115 Texas Cr. R. 480, 28 S.W. 2d 537; Davis v. State, 88 Texas Cr. R. 183, 225 S.W. 532; 39 Tex. Jur. 91, Sec. 43. "It would be burdensome if not intolerable to require that the title should be as full as the act itself. The word 'title' implies that no such requirement exists. The purpose of the Constitutional provision is merely to reasonably apprise the legislators of the contents of the bill, to the end that surprise and fraud in legislation may be prevented". Doeppenschmidt v. International & G. N. R. Co., supra. It is not required that the caption set forth a full index to all the contents of the law or

set forth the full details of the bill. 39 Tex. Jur. 97, Sec. 45. It is sufficient if the provisions of the statute relate, directly or indirectly, to the same subject, have a mutual connection, and are not foreign to the subject expressed in the title. 39 Tex. Jur. 91-93, 95, Secs. 43, 44 and 45. See also 50 Am. Jur. pp. 146, 147, Secs. 167 and 168; *Id.*, Sec. 170, p. 149, et seq. and Sec. 173, p. 153, et seq.; 12 Texas Law Rev. 88; 23 Texas Law Rev. 378, et seq.

A careful reading of the caption will demonstrate that the purpose of the Act is to provide that those who live on military reservations shall have the benefit of the public school system for their children. It is contemplated that this can be done by the establishment of a school district upon a military reservation when in the opinion of the Board of Education there are a sufficient number of scholastics residing on the reservation to justify such action. When, in the opinion of the Board of Education, there are not sufficient scholastics to justify the establishment of a school district wholly on the reservation, it is the stated purpose of the Act to permit the State Board of Education to include the military reservation in an existing school district. The caption also gives notice that the "children of such military reservation may be included in other school districts." This necessarily means the inclusion of territory where the children reside and not the transfer of children to other schools because the caption gives separate notice that "such children may be transferred to other schools."

"Incorporation in the body of an act of the means by which its object may be accomplished does not render the act obnoxious to the constitutional inhibition against bills containing more than one subject. Accordingly an act with one leading subject, which is expressed in its title, may contain appropriate provisions designed or tending to accomplish, effectuate or enforce the general object or purpose of the law. When the title expresses the main subject dealt with in the act, it embraces any lawful means for the accomplishment of the legislative object. It is immaterial that such subsidiary provisions are not expressly mentioned in the title, if they are legitimately connected with the subject expressed. In other words, any provision calculated to carry into effect the declared object of an act is unobjectionable, although not specially indicated in the title." 39 Texas Jur. Sec. 42, pp. 90-91.

The caption of Senate Bill 274 does not expressly provide

that when in the opinion of the Board there are not a sufficient number of scholastics residing upon a military reservation to justify the establishment of a school district wholly upon said reservation, the area in such reservation may be included in another school district—as is provided in the body of the bill. We believe that the provision in the body of the bill is not unconstitutional and void, because we believe such provision in the body of the bill is only an appropriate provision "designed or tending to accomplish, effectuate or enforce the general object or purpose of the law". By our construction of, the Act the scholastics on a military reservation will have and enjoy the same "privileges of and opportunities for public free school education as is accorded other children living within the State." (These quotes are from the Emergency Clause of the Act.)

We do not believe that the provision to include a military reservation in another school district is foreign to such purpose. On the contrary, we think it is germane, incidental to, and a means of carrying into effect the intention of the Legislature as shown by the caption of Senate Bill 274.

We overrule all points of error urged by petitioners. The Judgment of the Court of Civil Appeals is affirmed.

Opinion delivered: January 14, 1953.

Associate Justices Garwood and Smith dissenting.

Associate Justice Culver not sitting.

MR. JUSTICE SMITH, joined by Justice Garwood, dissenting.

The majority opinion completely ignores certain findings of fact and conclusions of law filed by the trial court in this case. The opinion fails to discuss in any manner the intention of the Legislature in enacting Senate Bill 274, Acts 44th Leg., Ch. 112, being Article 2756b, Vernon's Annotated Civil Statutes. It does not discuss the purpose of the Act. I believe a thorough study of the record made in this case, a review of the history of the Act, and a discussion of the manifest intention of the Legislature is essential to a correct solution of the important question involved in this suit.

First, I think it should be made clear that respondent did not bring this suit for any purpose of Senate Bill 274. Its prayer

and its contention is that it be awarded $315,000 under Article 2922-16. In fact, respondent's real contention is that the purpose of the purported inclusion orders of 1939 and 1949 by the State Board of Education was to allow it additional local fund credit under the minimum Foundation Program.

The trial court found that no portion of the Fort Bliss Military Reservation is included within the geographical boundaries of the El Paso District and that all of the Fort Bliss Military Reservation territory is included within the Smeltor, Socorro, Cooley, Winkler and Ysleta Districts of El Paso County, Texas. The trial court further found that the portion of Senate Bill 274 which reads: "And provided, that whenever in the opinion of the State Board of Education, the number of children resident upon any military reservation is not sufficient to warrant the establishment of a separate school district, that such military reservation *shall for the purpose of this Act* be included in any other school district under such regulations as the Board of Education may determine" gives statutory authority to the Board only to transfer *children* and not to transfer *territory*. (Emphasis added)

The majority opinion has held that the orders of the State Board of Education of 1939 and 1949 were authorized by the above quoted portion of Senate Bill 274, and that such orders effectively detached the Fort Bliss Military Reservation from the districts of which it was a part, and made it a part of the El Paso Independent School District. There is no language in the statute under consideration giving the State Board of Education authority to transfer territory from one school district to another, unless you construe the Act in the manner as reflected by the majority opinion by completely ignoring the phrase "for the purpose of this Act."

Authority to change school districts and school boundaries has always been vested in local school district boards, in county school boards, in local officials, or in the patrons of local school districts by the ballot. Section 5 of Article 2654-7 V.A.C.S., a provision of the Gilmer-Aiken law (S.B. 115, Acts 1949), provides that "No provision in this Act shall be interpreted to give to the State Board of Education, the State Department of Education, the State Commissioner of Education, or anyone whomsoever, the power to close, to consolidate, or cause by regulation or rule to be closed or consolidated, any independent or common school district in this State * * *." The final report of the

Gilmer-Aiken Committee, dated January 25, 1949, contains Section 1, Article 1, which reads: "There is hereby established a central education agency composed of the State Board of Education, the State Commisisoner of Education, and the State Department of Education. It shall carry out such educational functions as may be assigned to it by the Legislature, but all educational functions not *specifically* delegated to the Central Education Agency shall be performed by county boards of education, county school superintendents, or district boards of trustees." (Emphasis added)

It was never the intention of the Legislature to give to the State Board of Education statutory authority by the enactment of Senate Bill 274 to transfer territory and the interested parties did not so construe it. This statement is borne out by the record. When the State Board of Education passed its original order in 1939 finding that there was not a sufficient number of children of Fort Bliss to warrant the establishment of a separate school district and attached that reservation to the El Paso District, the Commanding General of Fort Bliss in his letter of consent to such action, stated he was informed that *"the State Board of Education adopted a resolution formally including the scholastics residing on the Fort Bliss Military Reservation in the El Paso Independent School District."* (Emphasis added) The letter then advised that the military authorities "concur in the above action taken by the State Board of Education". This, together with other evidence, supports the finding of the trial court that this 1939 attachment was only for the purpose of Senate Bill 274 and consequently was only an inclusion of scholastics.

The respondent wants this Court to turn away from the common-sense view, the practical view, and adopt a theory which would enrich the El Paso Independent School District to the injury of the other school districts of Texas. It wants us to elect, and apparently the majority of this Court has elected to brush aside the real purpose of the Act which was to enable children on military reservations to share in the only monetary contribution by the State for education, the annual apportionment of the State available school fund. Until the enactment of Senate Bill 274 our laws were wholly inadequate in this respect. Scholastics on a military reservation where, because there were not sufficient children to establish a school district, were unable to share in the available school fund. Secondly, no provision had been made for children on a reservation where a

school district had been established but where they had to go to school in another district because it was not feasible to provide all grades in the military reservation. Senate Bill 274 repealed House Bill 21 and solved the two problems just mentioned by the inclusion and adoption of the following provision:

"And provided, that wherever in the opinion of the State Board of Education, *the number of children resident upon any military reservation is not sufficient* to warrant the establishment of a separate school district, that such military reservation *shall for the purpose of this Act be included in any other school district under such regulations as the Board of Education may determine.* Provided further, that the Board of Trustees of such district shall *have the authority to transfer to any other independent or common* school district maintaining adequate facilities and standards for elementary, junior or senior high schools, as set up by the State Department of Education and Southern Association, *any school children who cannot be provided for by the district of their residence."* (Emphasis added)

It is manifest that the Legislature had a definite purpose in the enactment of Senate Bill 274, and that all of its provisions from the caption to the emergency clause harmonized with the idea that the lawmakers had no intention to disturb the territory of a military reservation which had always been in a school district.

The Legislative intent in enacting Senate Bill 274 is clearly revealed by the emergency clause of the Act. It reads:

"The fact that *the children* within the scholastic age who reside on military reservations located within this state are not accorded the same privileges of and opportunities for public free school education as is accorded other children living within the State, * * *."

This purpose of providing educational opportunities is also made crystal clear by the caption, which states:

"An Act authorizing the State Board of Education to establish independent school districts upon any military reservations located within the State of Texas, upon such terms and conditions which may be agreed upon by the State Board of Education, and the military authorities; provided such districts may be entitled to enumerate scholastics to share in the State per capita apportionment; providing what children may attend such

schools; *further provided that the children of such military reservations may be included in other school districts;* providing that such children may be transferred to other schools, * * *." (Emphasis added)

An eminent text writer has said that the practical inquiry in litigation is usually to determine what a provision, clause, or word means. To answer it one must proceed as he would with any other composition. Construe it with reference to the leading idea or purpose of the whole instrument. The case of Huntsville Independent School District v. McAdams, 148 Texas 120, 221 S.W. 2d 546, 549, quotes with approval the following language in Walker v. Haley, 110 Texas 50, 214 S.W. 295: "The modern cases also indicate that courts today rather than beginning their inquiry with the formal words of the act consider from the start the legislative purpose and intention. This tendency is to be commended for it is more consonant with the proper judicial use of statutory materials."

Again it has been said that a literal interpretation of the words of an act should not prevail if it creates a result contrary to the apparent intention of the Legislature and if the words are sufficiently flexible to admit of a construction which will effectuate the legislative intention. The intention should always prevail over the letter, and the letter must if possible be read so as to conform to the spirit of the Act. "While the intention of the Legislature must be ascertained from the words used to express it, the manifest reason and obvious purpose of the law should not be sacrificed to a literal interpretation of such words. * * * The particular inquiry is not what is the abstract force of the words or what they may comprehend, but in what sense were they intended to be used in the Act." The sense in which they were used by the Legislature furnishes the rules of interpretation and when this cannot be determined from the context of the Act, the court may resort to extrinsic aids. Obviously, if the statute specifically declares its intention and meaning, and I contend the language of the caption under consideration permits no other construction than one of a declaration of policy so as to include children of a military reservation, and not territory, in other school districts, then all other provisions of the Act are controlled by it and the policy section will be given and justly should be given primary importance in interpreting the remainder of the law. Sutherland Statutory Construction, 3rd Edition, Vol. 2, p. 339.

The title or caption of Senate Bill 274 conforms to Section 35 of Article III of our Texas Constitution which provides in effect that the various subjects of a bill shall be expressed in its title. One of the main purposes of this constitutional provision is to advise the Legislature and the people of the nature of each particular bill. I was not surprised when, during oral argument of this case, Mr. Justice Calvert propounded to one of the attorneys for respondent the following question: "What part of the caption authorizes the provisions for attachment of territory?" The answer of counsel seems to indicate that respondent relies on that portion of the caption which reads: "* * * to establish Independent School Districts upon any military reservations located within the State of Texas * * *," to support its contention that territory was meant to be included and not just the children.

An analysis of the caption will give the correct answer to the question. Looking at the caption of the statute involved, it may be seen that the only portions authorizing military reservation children to go to schools in districts outside the military reservation are those which state:

"* * * further provided that the children of such military reservations may be included in other school districts; providing that such children may be transferred to other schools;***."

These provisions deal specifically with transfer of children, not territory. It will be noticed that the Legislature used a form of caption which is narrow and restricted, and not a broad general caption which would give notice of a provision in the body allowing a transfer of territory. For each provision in the caption there is a corresponding provision in the body of the Act. The caption mentions establishment, and the body provides for establishment of a military reservation school district, specifying the manner of establishment. The caption mentions transfer of children, and the body provides for transfer by the Board of Trustees of a reservation school district. The caption mentions inclusion of children in other school districts, and the body provides for inclusion by the State Board of Education for the purpose of the Act.

I cannot concur with the position assumed by respondent that the caption provision in Senate Bill 274 which deals with "establishing" military reservation independent school districts is notice of a provision in the body allowing the detaching of territory from one school district and its attachment to another.

The correct view, in my opinion, is further found by comparing that part of the caption with the first two paragraphs of Section 1. By this comparison it will be found that the establishment is for an independent school district on a military reservation and that if a school district is established only children of military reservation personnel may attend the school so established. Nothing is said in the caption about transferring territory from one school district to another "for all purposes" or for any purpose.

The opinion of the Court of Civil Appeals contains the following paragraph: "It is suggested that the decision which we have reached will result in an unjust enrichment of the El Paso schools. If so, the reward will be to the authorities who received and educated these school orphans rather than to those districts which did nothing in this regard." Since when, may I ask, has it become the province of a court to pass out rewards, especially where there is no foundation in fact or law for such action. The findings of the trial court clearly show that the holding of the Court of Civil Appeals will enrich the El Paso District and financially injure the five school districts in which the Fort Bliss Military District is located.

The record refutes the idea that the El Paso school district has made a supreme sacrifice without compensation in order to educate the children residing on Fort Bliss Military Reservation. In the first place, El Paso District asked for and accepted this responsibility. At the time of the trial it had received from the United States government $148,801.67 for the education of the children residing upon the Fort Bliss Military Reservation and attending school in the Independent School District, and had applied for an additional sum of $103,705.28 for the years 1949-50 and 1950-51. It had applied for a sum "in excess of two million dollars from the United States government for buildings and improvements based upon the number of scholastics from the Fort Bliss Military Reservation attending plaintiff's schools." The trial court made the further finding: "Should plaintiff be successful in this suit, the local fund contribution of the Independent School District of the City of El Paso, Texas, would be approximately $78,972.24." Whereas, the present local fund charged against El Paso County is $408,972.24. This finding simply means a saving to the City of El Paso of $330,000.00, and likewise a charge against the State of the same amount. In other words, in the event the respondent should be successful in this suit, the sum of $330,000.00 will be

added to the $2,516,886.70, which is the present amount the State contributes in El Paso County. Breaking this down a step further, El Paso County maintains a tax rate of $.30 on each $100.00 evaluation of taxable property in El Paso County to raise the *$408,972.24.* Should it be successful in this litigation, the tax necessary to support the minimum program in the El Paso district would be reduced to $.05 per $100.00. On the other hand, the present tax rate throughout the State to support just the minimum Foundation Program averages $.60 per $100.00 evaluation. The majority opinion does not attach any significance to the facts recited above as well as the subsequent facts referred to in this opinion, and the Court of Civil Appeals after rewarding the El Paso District for its efforts in educating the "orphans" of the military reservation, recites in its opinion that the following facts are "relatively unimportant." (1) The County Tax Assessor-Collector of each county is, under Section 5, Article 2922-16, required to certify to the State Commissioner of Education the "total area of each school district" within the county and that such officer of El Paso County has made conflicting certificates concerning the inclusion of the Fort Bliss area in the El Paso District. (2) The school districts of Ysleta, Smelter, Socorro, Cooley and Winkley "have issued bonds in the amount of over Five Hundred Thousand ($500,-000.00) Dollars since the first resolution of 1939, certifying with such bond issue that the territory of the Fort Bliss Military Reservation is included within the boundaries of such school districts."

Now I turn to the question of injury to the five school districts directly involved, as well as all other districts in Texas occupying a similar situation. I first direct attention to the provision of Article 2922-16, Section 5, Vernon's Civil Statutes, a portion of what is commonly known as the Gilmer-Aiken Bill, which reads:

"Provided, however, that in any district containing State University-owned land, State-owned prison land, Federal-owned forestry land, Federal-owned Military reservations or Federal-owned Indian reservations, the amount assigned to such school district shall be reduced in the proportion that the area included in the above-named classifications bears to the total area of the district, * * *."

Next, bear in mind we are directly concerned with a military reservation which has been expanded from an area of 8.98 square miles in 1939, the date of the original order of the Board,

to 101.125 square miles in 1949, the date of the second order affecting the districts, was passed. Contrary to the intention of the Legislature this vast tax-free area has been lifted out of its geographical location and attached or annexed to El Paso School District by the passage of a simple resolution by the State Board of Education, and the Court of Civil Appeals, as well as the majority opinion has sanctioned such action. The pertinent language of the order is as follows:

"* * * all Federal-owned lands in El Paso County, Texas, * * * constituting the Fort Bliss Military Reservation be, and the same hereby are, included in the El Paso Independent School District of the City of El Paso, Texas, and same shall hereafter *be a part of the El Paso Independent School District of the City of El Paso, Texas, for all purposes* * * * and that the children of scholastic age residing on said Fort Bliss Military Reservation shall be enumerated in the scholastic census as being in the El Paso Independent School District and shall be entitled to the same rights and privileges as other children of scholastic age residing within said El Paso Independent School District, * * *." (Emphasis added)

The Court of Civil Appeals and the majority opinion by this Court has held that this order effectively annexed the entire Fort Bliss Military Reservation to El Paso District thereby causing the five districts heretofore named to suffer a loss of the credit provided for by Section 5, of Article 2922-16 supra, as well as the support which the outstanding bonds of these districts (amounting to $584,000.00) would receive from the levy and collection of taxes on any part of the area withdrawn from them and annexed to the El Paso District which may in the future be abandoned by the government as a military reservation and sold to private ownership.

A review of the legislation affecting the public school system of Texas from the days of the Republic to the present time, a consideration of such enactments as Articles 2742a, 2742b, 2742c, 2742c-1, 2742e, 2742e-1, 2742f, 2742i, 2766, 2767, 2783c, Vernon's Texas Civil Statutes, wherein detailed provision has been made for the transfer of territory from one school district to another completely justifies the observation contained in the Amicus Curiae argument filed in this Court by the five districts wherein it said:

"It does not seem likely that a state whose legislative policy for a century has been to make the school district the basis of

the public school system and to provide by statute in elaborate detail the means for taking territory from one district and placing it in another district, would so summarily provide for taking territory from one district and giving it to another as would be involved in Article 2756b, if it were construed to mean that the State Board of Education could by simple resolution transfer territory from one school district to another school district 'for all purposes', as the language appears in the resolution of the State Board of Education adopted in 1949 and here relied on by respondent."

The majority opinion holds that previous to the two orders of the State Board of Education made in 1939 and 1949, respectively, the Fort Bliss Military Reservation was within and a part of the five districts, and, but for such orders the territory would have remained in, and as a part of, these districts. There are no Texas decisions concerning the status of Texas land in a school district acquired by the Federal Government, and the majority opinion cites none from this or any other jurisdiction supporting its holding. The petitioner relies on the rule stated in 56 Corpus Juris 207, Schools and School Districts, Section 54, as follows:

"The acquisition by the United States of land situate within a school district for military purposes does not detach such territory from the district or remove it therefrom, but it remains a part thereof * * *."

In the case of Hufford v. Herrold, (1920) 189 Iowa 853, 179 N. W. 53, the question of the status of military reservation territory was involved, and the Court held in part:

"Appellants also maintain that, even if it were conceded that the original incorporation of the district was in all respects valid, yet because of the matters set forth in the petition, and admitted by the demurrer, it has ceased to have a valid existence. The acquisition by the United States government of a portion of the territory included within said district for military purposes, it is true, deprived the district of the right to levy and collect taxes therefrom, but our attention is called to no statutory provision or other authority to the effect that such action changed the boundaries of said district, or took the land thus acquired by the government out of the territorial limits of the district * * *. If the United States government shall in the future restore land taken to private ownership, it would doubtless

be subject to the payment of taxes, the same as though the government had not acquired it for military purposes."

Being firmly convinced that the majority opinion is contrary to the intention of the Legislature and will work an irreparable injury to many of the school districts of Texas, I respectfully enter this dissent. The judgment of the Court of Civil Appeals should be reversed and that of the trial court affirmed.

Opinion delivered: January 14, 1953.

Associate Justice Garwood joins in this dissent.