## Ex Parte J. H. Faison.

### No. 6895. Decided February 14, 1923.

**1.—Motor Vehicles—Constitutional Law—Class Legislation.**
    The act found in Chapter 52, General Laws, First and Second Called Sessions, Thirty-seventh Legislature is obnoxious to. that prov' ion of the Constitution prohibiting class legislation. Inasmuch as Section 16, places trucks and tractors used for agricultural purposes upon a different footing before the law from similar trucks and tractors used for commercial and other purposes.

**2.—Same—Delegating Legislative Authority—Commission.**
    Said Section 16, also delegates to the Highway Commission authority to grant to any truck operator, no matter how heavy his load or vehicle, the right and permission to so operate same upon public highways, and is therefore invalid.

**3.—Same—Delegated Power to Suspend Law.**
    Section 28, Article 1, of our Constitution denies to the Legislature the right to delegate power to suspend the law, and said clause in said Act is therefore invalid.

**4.—Same—Caption of Bill—Different Subjects—Constitutional Law.**
    Sections 35 and 36 of Article 3 of our Constitution expressly inhibits engrafting by amendment upon laws or writing into the body of such laws originally, any subject not comprehended by the title of the Act, and Section 3 of said Chapter 52, is therefore invalid.

From Dallas County.

Original application for habeas corpus asking release from arrest for a violation of the law relating to the operation of commercial motor vehicles on public highways, under Chapter 52, General Laws, First and Second Called Session of the Thirty-seventh Legislature.

The opinion states the case.

*Love & Rutledge,* for appellant.—Cited Ex parte Leslie, 223 S. W. Rep., 227; Kimbrough v. Barnett, 93 Texas, 301; Western Union Tel. Co. v. State, 62 Texas, 630.

*R. G. Storey,* Assistant Attorney General, for the State.

LATTIMORE, Judge.—J. H. Faison, hereinafter styled relator, was arrested upon a warrant issued out of Justice Court of precinct No. 1 of Dallas County for a violation of the law relating to the operation of commercial motor vehicles on public highways, which is found in

Chapter 52, General Laws, First and Second Called Sessions of Thirty-seventh Legislature. Relator in the usual form alleges his illegal arrest and detention, and attacks the constitutionality of said law by appropriate averments.

This court hesitates under any circumstances to strike down a law enacted by the legislative branch of our government, and has had much concern over this attack upon a law manifestly intended to protect the whole people in their use of the public highways of this State, as against what is becoming a serious matter both to highways and to citizens who pay for and use them for ordinary traffic. The progress of legislation since the enactment in 1917 of the law creating our Highway Commission in this State, in its successive efforts to adequately regulate the use of highways for commercial purposes by heavy vehicles, is interesting and indicates a realization of the seriousness of the problem referred to. We have withheld announcing our conclusion upon this matter to such time as the representatives of the people are in session so that there might be speedy action after this decision looking to the enactment of proper laws safeguarding the highways and defining the rights of the various users thereof.

The law in question is obnoxious to that provision of our Constitution prohibiting class legislation. Sec. 3, Art. 2, Bill of Rights. Chapter 52 presents the enactment of an amendment to Sec. 16 of the original highway law of 1917. We quote a part of said section:

"Vehicles Not Subject to Registration. Trucks or tractors used exclusively for agricultural purposes, fire engines, road rollers, steam shovels, and other road building and agricultural machinery shall not be required to be registered; provided that nothing in this section shall be construed to exempt from this Act motor vehicles, trailers, semi-trailers, and tractors used for road building purposes and privately owned; provided that trucks used exclusively for agricultural purposes shall be registered by horsepower as is now provided for registration of automobiles and shall be subject to all the provisions of this Act, except the payment of annual license fees."

This paragraph of the law in question places trucks and tractors used for agricultural purposes on a different footing before the law, from similar trucks and tractors used for commercial and other purposes, and while the Legislature may differentiate between citizens following different occupations without breach of the constitutional forbiddance, this is because it is to be supposed that such persons in matters properly discriminated between, will be engaged in acts and business substantially different, and upon which difference may be based the right to receive at the hands of the law-makers different treatment; but when classes of persons or occupations which are really and substantially the same, are treated differently by a law upon the camouflage of a name only, the courts will not permit it. The Act under discussion deals with roads and road using vehicles, and the effect of their use

upon the roads, and in our opinion it may not call trucks and tractors which are exactly similar in construction, character and effect in usage upon highways,—agricultural implements, and subject to one classification in one clause of the law;—and call them commercial vehicles and subject to another classification in the next clause thereof. A farmer's tractor or a dairyman's truck may carry or pull a load of such weight as to grievously injure a highway upon payment of a small license fee under this statute, while the same weight, vehicle or load if used in a commercial transaction, would be prohibited entirely or made to pay a much heavier fee for license. That this is class legislation seems too plain to need further argument.

Attention is also called to other parts of said law. In said amended Sec. 16 we find the following:

"No motor vehicle shall be licensed under this Act whose net carrying capacity is greater that eight thousand pounds, provided that the officers or persons charged with the supervision and care of any certain highway may make written application to the State Highway Commission, asking that motor vehicles having a greater carrying capacity than named in this Act be permitted to operate on and over the highway specifically named in the application; and the State Highway Commission shall after investigation and finding the highway named in the application of sufficient construction to carry without material injury a load greater than that named in this Act, then the State Highway Commission shall have the authority to issue to owners of motor vehicles a license authorizing a greater load than named in this Act. Said license shall state the amount of load that may be carried and also the section of highway over which said motor vehicle may carry such excess load."

The plain effect of this is to remove the maximum limit upon truck loads at the pleasure of the Highway Commission, and to delegate to such commission authority to grant to any truck operator, no matter how heavy his load or vehicle, the right and permission to so operate same upon public highways, in which event he could not be penalized unless he exceeded the extra weight, etc., fixed by the officers of the Highway Commission. In other words, without specifying under what named conditions,—the unlimited power of grant of permission to operate with heavier loads than those named in the statute, is given to the Highway Commission.

In this connection we call attention to another clause in said Act which is as follows:

"Anything to the contrary notwithstanding, upon application in writing to the State Highway Department, said Department in its discretion may issue a special permit to the owner or operator of any vehicle allowing heavier or wider loads than named herein, to be moved or carried over and on the public highways and bridges. They may also issue such special permit to increase the permissible weight per inch

of width of tire. Such permits shall be in writing and they may limit the time and use of operation over the said highways and bridges which may be traversed and may contain such special conditions and provisions and require such undertaking or other security as the said Department shall deem to be necessary to protect the public highways and bridges from injury, or provide indemnity from any injuries resulting from such operation. All such special permits shall be carried in the vehicle to which they refer and upon demand shall be open to inspection of any peace officer or employee charged with care or protection of public highways."

A casual reading of this quotation seems to make patent the fact that it is so obnoxious to Sec. 28, Art. 1 of our Constitution denying to the Legislature the right to delegate power to suspend a law, as to require no analysis. Said section of the Constitution in terms provides that no power of suspending laws in this State shall be exercised except by the Legislature. As this provision was in the Constitution prior to the adoption of the one now in force in this State it read: "No power of suspending laws in this State shall be exercised except by the Legislature *or its authority.*" It will be observed that the words "or its authority" are no longer a part of the fundamental law of our State, and as held by this court in Ex parte Coombs, 38 Texas Crim. Rep., 648, and by the Supreme Court of this State in McDonald v. Denton, 132 S. W. Rep., 823, this repealed any authority to delegate its power theretofore existing in the Legislature.

It might be further observed concerning the provisions of said Chapter 52 under discussion, that the caption of the bill enacting said chapter seems to include three subjects, viz.: the amendment of Sec. 16, the repeal of Sec. 16a, and the repeal of Sec. 4, all referring to Chapter 131, General Laws, Regular Session, Thirty-seventh Legislature. In the body of the bill enacting said Chapter 52, in addition to the three subjects named in the caption, there appears Sec. 3 which in nowise relates to, is part of, or is connected with either of the sections named in the caption as affected by said bill. We also note that Sec. 3 of Chapter 131 of the General Laws, Regular Session, Thirty-seventh Legislature, which this new Sec. 3 of the amendatory Chapter 52 purports to amend, was itself inserted in said Chapter 131 without notice in the caption, or without being embraced in the subjects named in said caption. Secs. 35 and 36 of Art. 3 of our Constitution expressly inhibit engrafting by amendment upon laws, or writing into the body of such laws originally, any subject not comprehended by the title to the act. Gunter v. Mortgage Co., 82 Texas, 502; City of Austin v. McCall, 95 Texas, 575; Ex parte Segars, 32 Texas Crim. Rep., 553; Ratigan v. State, 33 Texas Crim. Rep., 305; Ex parte Herman, 45 Texas Crim. Rep., 346; Joliff v. State, 53 Texas Crim. Rep., 63; Ex parte Walsh, 59 Texas Crim. Rep., 415. Giving effect herein to these decisions and the mandates of our Constitution, we are compelled to hold Sec. 3 of said

Chapter 52 to have been placed in the law without constitutional authority. Manifestly a law having for its main named purpose the amending of specific sections of a former law, the carrying into effect of which expressed purpose appears in the body of the law in Secs. 1 and 2 of such amendatory Act, may not then proceed to enumerate other sections which would thus become a part of the original Act sought to be amended, which other sections are not included in the caption or drawn within the law by reason of being enlargements of or changes in those sections whose amendment is made the subject of the title of the amendatory act in question.

If Section 16 of this chapter be unconstitutional for that it is class legislation and reflects an effort on the part of the Legislature to delegate power to the Highway Commission; and if Section 3 of said Act be obnoxious to the Constitutional inhibition against the appearance in the body of an Act of matters substantially variant from the purpose of the Act as expressed in its caption, then there would seem to us little need for a discussion of the application of Section 6 of said Chapter 52, which in terms provides that the holding of any part of this law unconstitutional shall not affect the remaining parts.

The Act in question was held unconstitutional by the Honorable Court of Civil Appeals at Dallas, Texas, in July, 1922, in the case of Lassing v. Hughes, No. 8856, which we have not yet seen in print.

For the reasons mentioned the contention of relator is upheld and his discharge is ordered.

*Relator discharged.*