**Houston WHITE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 41925.**

Court of Criminal Appeals of Texas.

April 9, 1969.

Rehearing Denied May 28, 1969.

OPINION

ONION, Judge.

The offense is sale of a dangerous drug, to wit: lysergic acid diethylamide; the punishment, 5 years, probated.

In four grounds of error appellant attacks the constitutionality of the statute under which he was convicted. See Article 726d, V.A.P.C., as amended, 1967 (S.B. No. 17, Acts 1967, 60th Legislature, p. 1847, ch. 720).[1]

First, we shall consider appellant's specific contention that the trial court erred in failing to quash the indictment since the caption or title to the 1967 act amending the Dangerous Drug Act, Article 726d, supra, to include hallucinogens (lysergic acid diethylamide, LSD, LSD–25, peyote, mescaline, etc.) in the definition of "dangerous drugs" was insufficient to apprise the Legislature and the public of the drastic changes in penalties and the elimination of penalties for other offenses, thus violating the mandatory provisions of the Texas Constitution, Article III, Section 35.[2]

The caption or title to the 1967 act under attack reads:

"An act to include lysergic acid diethylamide and other hallucinogens in the list defining 'dangerous drugs,' and specifying its possession to be an unlawful act; providing that the illegal sale, manufacture, or furnishing of any

Sam Houston Clinton, Jr., Austin, for appellant.

Robert O. Smith, Dist. Atty., Dain P. Whitworth, Asst. Dist. Atty., Austin, and Jim D. Vollers, State's Atty., Austin, for the State.

1. This bill was passed at the 11th hour of the 60th Legislature, Regular Session, and the Governor permitted the same to become law without his signature.

"Passed the Senate on May 23, 1967: Yeas 31, Nays 0; May 29, 1967, Senate refused to concur in House amendments and requested appointment of Conference Committee; May 29, 1967, House granted request of the Senate; May 29, 1967, Senate adopted Conference Report by a viva voce vote; passed the House on May 27, 1967, with amendments, by a non-record vote; May 29, 1967, House granted request of the Senate for appointment of Conference Committee;

May 29, 1967, House adopted Conference Report by a nonrecord vote.
"Filed without signature June 18, 1967.
"Effective Aug. 28, 1967, 90 days after date of adjournment."
General and Special Laws of Texas, 60th Legislature, Regular Session, Ch. 720, pp. 1847, 1849.

2. Article III, Section 35, Texas Constitution. "No bill * * * shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed."

dangerous drug is unlawful; amending Subsection (a) of Section 2, Subsection (d) of Section 3 and Section 15, Chapter 425, Acts of the 56th Legislature, Regular Session, 1959, as amended (Article 726d, Vernon's Texas Penal Code); and declaring an emergency."

The body of this act did include hallucinogens within the definition of dangerous drugs and made their possession an unlawful act, but at the same time it made substantial changes in the penalty provision of the Dangerous Drug Act.

Article 726d, supra, as originally enacted in 1959 (Acts 1959, 56th Leg., p. 923, ch. 425) was a rather comprehensive act designed to regulate and control the handling, sale and distribution of "dangerous drugs"

defined in the act. The legislative intent and policy is expressed in Section 1 thereof.[3] Such act, in Section 15 thereof provided the same or uniform penalty for *all* violations of the statute, making the first offense a misdemeanor and the second or subsequent violations a felony.[4]

From 1959 until the 1967 amendment Article 726d, supra, had remained unchanged, except for the 1965 amendment (Acts 1965, 59th Leg., p. 971, ch. 466) to include thallium or any compound thereof in the list of "dangerous drugs." In 1965 no attempt was made to alter the uniform penalty.

The body of the 1967 act under attack made some definite changes in penalties.[5]

3. "Section 1. The Legislature of the State of Texas hereby finds that it is essential to the public health and safety to regulate and control the handling, sale and distribution of 'dangerous drugs,' as defined in this Act.

"It is, therefore, hereby declared to be the policy and intent of the Legislature of the State of Texas and the purpose of this Act to regulate and control such handling, sale, and distribution, and, in particular, but without limitation of such purpose, to insure that the public shall receive the therapeutic benefits of 'dangerous drugs' under medical supervision to the full extent required to assure safety and efficiency in their use; to complement and supplement the Laws and Regulations of the Congress of the United States and the appropriate agencies of the Federal Government affecting such handling, sale, and distribution; to prevent such handling, sale or distribution for harmful or illegitimate purposes; and to place upon manufacturers, wholesalers, licensed compounders of prescriptions, and persons prescribing such drugs, a basic responsibility for preventing the improper distribution of such drugs to the extent that such drugs are produced, handled, sold, or prescribed by them."

4. "Sec. 15. *Any person, firm, or corporation violating any of the provisions of this Act shall be fined an amount not exceeding Three Thousand Dollars ($3,-000) or confined in jail for a period of not less than thirty (30) days nor more than two (2) years, or by such fine and imprisonment.* For any second or sub-

sequent violation of this Act, any person so violating the same shall be confined in the penitentiary not less than two (2) years nor more than ten (10) years; provided that upon any second or subsequent conviction the benefits of the suspended sentence law shall not be available to a defendant convicted for a violation of the provisions of this Act; provided further that any person convicted of any second or subsequent violation of this Act shall be entitled to the benefits of probation under the Adult Probation and Parole Law, as provided therein. Acts 1959, 56th Leg., p. 923, ch. 425.

5. Section 15 of the 1967 Act reads as follows:

"(a) Any person, firm or corporation possessing in violation of Section 3 of this Act any dangerous drug defined in Subdivisions 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12 or 13 of Section 2(a) of this Act shall be fined an amount not to exceed Three Thousand Dollars ($3,000) or confined in jail for a period of not less than thirty (30) days nor more than two (2) years, or by both such fine and imprisonment. For any second or subsequent violation, any person shall be confined in the penitentiary not less than two (2) years nor more than ten (10) years.

"(b) *Any person, firm or corporation possessing in violation of Section 3 of this Act any dangerous drug defined in Subdivision 3 of Section 2(a) of this Act shall be fined an amount not to exceed Three Thousand Dollars ($3,000) or confined in jail for a period of not less than thirty (30) days nor more than one*

It restricted the former uniform penalty to the unlawful possession of dangerous drugs *other than hallucinogens;* provided that possession of the enumerated hallucinogens shall be a misdemeanor with penalties varying from that of penalties for the misdemeanor or first violation for possession of other dangerous drugs; provided that any person (no reference made to a firm or corporation as in the original act) who sells, delivers or manufactures any dangerous drug shall be guilty of a felony.

Further, while disagreeing as to the ultimate construction or interpretation, the State and the appellant do agree that changes in the penalty provisions have also eliminated any penalty for the offenses denounced in Subsections (b), (c), (f) and (g) of Section 3, Section 5, Section 6, Section 7, Section 13 and Section 14 of Article 726d, supra; and that such action renders those provisions unenforceable in a criminal proceeding. Among other things these provisions relate to unlawful refilling of a prescription for a dangerous drug, failure to file and retain prescriptions, failure to keep certain records, the unlawful revelation of any method or process which as a trade secret is entitled to protection, the duties of exempt persons, the keeping of files and records, inspection and inventory of drugs, contracts for purchases from or sales by out of state persons, using a minor as an agent, and forging or altering prescriptions.

The question thus presented is whether or not the above caption to the 1967 act was sufficient to meet the requirements of Article III, Section 35, Texas Constitution.

■ The reason underlying this constitutional requirement is to advise the Legislature and the people of the nature of each particular bill so as to prevent the insertion of obnoxious clauses which might otherwise be engrafted on it and become law. Fraud and deception are rendered less likely if the caption or title of an act, which is often the only part of the bill read by busy members of the Legislature, fully apprises the members of the contents of the bill itself. Consolidated Underwriters v. Kirby Lumber Co., Tex.Com. App., 267 S.W. 703; Schlichting v. Texas State Board of Medical Examiners, 158 Tex. 279, 310 S.W.2d 557; Gulf Insurance Co. v. James, 143 Tex. 424, 185 S.W.2d 966; Ferrantello v. State, 158 Tex.Cr.R. 471, 256 Tex.2d 587. See also Interpretive Commentary, Vernon's Anno. Texas Constitution, Article III, Sec. 35. See 53 Tex.Jur.2d, Statutes, Sec. 41, p. 74.

■ And it has been said that "[i]n so far as it deals with captions of bills, as distinguished from the matter of multiple subjects thereof, its object is to facilitate and protect the legislative process by affording legislators and other interested people a ready and reasonably accurate means of knowledge of the contents of bills without their having to read the full text." Shannon v. Rogers, 159 Tex. 29, 314 S.W. 2d 810. See also Harris County Fresh Water Supply District No. 55 v. Carr, Tex., 372 S.W.2d 523.

■ Since that is the function of the title requirement in legislative bills, the sufficiency of the title is determined by what the title says and not by what it was intended to say. "It must give fair notice within itself and a reading must reasonably forewarn of the subject of the statute." Harris County Fresh Water Supply District No. 55 v. Carr, supra; Adams v. San Angelo Water Works Company, 86 Tex. 485, 25 S.W. 605.

(1) year, or by both such fine and imprisonment.
"(c) Any person who sells, delivers or manufactures any dangerous drug defined in Subdivisions 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 or 13 of Section 2(a) in vio-

lation of this Act, shall be guilty of a felony and upon conviction is punishable by confinement in the penitentiary for not less than two (2) nor more than ten (10) years."

■ The Courts of this state have been called upon on numerous occasions to interpret Article III, Section 35, Texas Constitution. It has been consistently held that in determining its application, the caption or title of the act should be liberally construed so as to uphold its validity rather than giving the act a strict construction which would lead to striking down the act or a part thereof. Fletcher v. State, 439 S.W.2d 656 (Supreme Court of Texas, 1969); Lee v. State, 163 Tex. 89, 352 S.W. 2d 724, 725; Gulf Insurance Co. v. James, supra; Yeary v. Bond, Tex.Civ.App., 384 S.W.2d 376 (err. ref. n. r. e.); Central Education Agency v. Independent School Dist. of City of El Paso, 152 Tex. 56, 254 S.W.2d 357; 53 Tex.Jur.2d 99, Statutes, Sec. 54.

■ A liberal construction will not, of course, be followed to the extent of allowing the Legislature to by-pass constitutional restrictions. Gulf Insurance Co. v. James, supra. When the Constitution grants certain powers, and the means by which these powers can be exercised are prescribed, such means are exclusive of all others. Parks v. West, 102 Tex. 11, 111 S.W. 726 (reh. den. 113 S.W. 529); Holley v. State, 14 Tex.App. 505.

In applying these same principles and constitutional provisions the Supreme Court of Texas had occasion recently to declare Article 2615f–2, V.A.C.S., 1965 (Polygraph Examiners Act) unconstitutional. Fletcher v. State, supra. There the Court was concerned with the caption or title to an original enactment.

■ In considering the question before us it must be borne in mind that we are dealing with an amendatory act, not an original enactment. A somewhat stricter rule of conformity of title to subject matter legislated on in body of the act is applied to amendments than to titles of original acts. Praetorians v. State (CA) Tex.Civ.

App., 184 S.W.2d 299. Further, it must be remembered that the title or caption in question chose to specify the field the amendment is to cover.

■ It is well established that when the title of an original act embraces matters covered by an amendment, the title or caption of the amendment need not state the subject of the law amended or specify the nature of the proposed amendment, but new substantive matter in the amendment, not germane to the provision amended, is invalid as legislation on matters not expressed in the title of the amendatory act. See 53 Tex.Jur.2d, Statutes, Sec. 60, p. 107.

■ A title that is not, however, content to state a purpose to amend a certain statute but proceeds to specify the particular field an amendment is to cover or states a purpose to make a certain change in the prior law, that is not merely descriptive of the matter to which the law relates, limits the amendatory act to the making of the change designated, and precludes any additional, contrary or different amendment.

In Rutledge v. Atkinson, Tex.Civ.App., 101 S.W.2d 376, the Austin Court of Civil Appeals said:

"The rule announced in these cases[6] is to the effect that, although an act may be amended in any germane particular by an amendatory act, the title of which merely refers to the act or article sought to be amended, without specifying in what the amendment consists, yet when such title states the particular respect in which the amendment consists, any amendment not germane to that specified is invalid as being repugnant to the invoked constitutional provision."

This rule was well discussed by Judge Christian speaking for this Court in Walker v. State, 134 Tex.Cr.R. 500, 116 S.W.2d 1076. See also Morgan v. State,

---

6. Ward Cattle and Pasture Company v. Carpenter, 109 Tex. 103, 105, 200 S.W.

521; Arnold v. Leonard, 114 Tex. 535, 273 S.W. 799, 803.

134 Tex.Cr.R. 490, 116 S.W.2d 1079; Pittman v. State, 134 Tex.Cr.R. 494, 116 S.W.2d 1080.

In Ward Cattle and Pasture Company v. Carpenter, 109 Tex. 103, 200 S.W. 521, the Supreme Court of Texas considered a title which indicated that certain counties were being included in the benefits of the stock law when, in fact, one county—Matagorda—was dropped from the list of counties that might avail themselves of the law. It was held that the act violated the Constitution to the extent of its attempt to exclude Matagorda County. Particular emphasis was given to the fact that the title was misleading and carried "a distinct assurance that the object of the Act was a limited one, and that its scope was to amend the article in that way and no other." See also Harris County Fresh Water Supply District No. 55 v. Carr, supra.

■ In 53 Tex.Jur.2d 112, Statutes, Sec. 61, it is written:

"Thus a title that expresses a purpose to change a prior law by adding or extending a provision or conferring a right does not warrant an amendment that omits or restricts a provision of the original act or destroys a previously existing right. Similarly a title expressing a purpose to change a definition does not authorize a change of penalty. Nor does a title expressing a purpose to change a penalty authorize a change of definition.[7] * * * *"

Rotner v. State, 122 Tex.Cr.R. 309, 55 S.W.2d 98, dealt with a title of act amending Article 1316, V.A.P.C. In Rotner this Court said:

"There was a material change in the penalty. The caption of the amendatory act restricted the purpose of the bill to a change in the definition of the offense. The framers of the bill thus informed the public and their fellow legislators that the purpose of the bill was to change the definition. In changing the penalty, the bill went beyond the express limitation of its caption, and, under section 35 of article 3 of our Constitution and authorities, this destroyed its effectiveness as a law. Ex parte Heartsill, 118 Tex.Cr.R. 157, 38 S.W.(2d) 803, and authorities cited; Ex parte Faison, 93 Tex.Cr.R. 403, 248 S.W. 343. We quote from Ex parte Heartsill, supra, as follows: 'It has been held by the courts that when the express verbiage of such title limits and restricts the purpose of the bill, any attempt to legislate otherwise in such bill variant from the purpose prescribed, is in excess of the legislative power, and that a law subject to this complaint is unconstitutional.'"

See also Gilbert v. State, 122 Tex.Cr.R. 542, 56 S.W.2d 880; Feagin v. State, 166 Tex.Cr.R. 3, 310 S.W.2d 99; Snyder v. State, 123 Cr.R. 104, 57 S.W.2d 855; Ex parte Garcia, 125 Tex.Cr.R. 208, 67 S.W.2d 609; Doucette v. State, 166 Tex.Cr.R. 569, 317 S.W.2d 200 and Ex parte Meyer, 172 Tex.Cr.R. 403, 357 S.W.2d 754.

The application of the above announced principles and authorities to the case at bar is too plain to require further discussion. Even the most liberal of constructions will not be enough to uphold the act.[8] The language of the 1967 act clearly imports

7. See Smallwood v. State, 118 Tex.Cr.R. 91, 39 S.W.2d 1116; McBrayer v. State, 118 Tex.Cr.R. 90, 41 S.W.2d 245; Ex parte Heartsill, 118 Tex.Cr.R. 157, 38 S.W.2d 803.

8. No reference is made in the title to penalty though the title specifies Section 15 is to be amended. Even if the title be construed as giving fair notice that special penalties for the acts made unlawful by the amendments were being provided, such title still would not be sufficient to give fair notice to the Legislature or call to the public's attention the former uniform penalty was being materially restricted and penalties for other offenses were being omitted altogether.

that the act is to be amended in the stated particulars. No fair notice was given of any intent to make the drastic and radical changes in the penalty provisions that were made or to eliminate penalties for other offenses provided for by the act being amended, and which goes a long way in destroying the very effect of the stated policy and intent of the overall act. Article 762d, Sec. 1, V.A.P.C.

We therefore conclude that the trial court erred in overruling appellant's motion to quash the indictment for the reasons stated.

In holding the 1967 act violative of Article III, Section 35, Texas Constitution, we need not consider appellant's other grounds of error. In view, however, of vast public welfare involved and the undoubted desire of the Legislature to reconsider this matter, perhaps at its present regular session, we call attention to another of appellant's contentions.

He urges that the failure of the 1967 act to re-enact and publish at length the respective sections the act purports to amend violates the rule of Article III, Section 36, Texas Constitution, which provides in pertinent part that " * * * the section or sections amended shall be re-enacted and published at length." Appellant complains the 1967 act attempted only to re-enact *sub*sections which he contends the constitutional mandate prohibits except by re-enacting and publishing the section in which the subsection appears. See Henderson v. City of Galveston, 102 Tex. 163, 114 S.W. 108, 111–112; State Highway Department v. Gorham, 139 Tex. 361, 162 S.W.2d 934, 937.

He recognizes the holding in Ellison v. Texas Liquor Control Board (Tex.Civ.App. Galveston-1941), 154 S.W.2d 322, writ refused, that the constitutional rule involved was not violated when only subsections of the Texas Liquor Control Act were amended by being "re-enacted and published at length." Appellant points out, however, that each subsection there involved was in reality a section, a whole, complete entity whose meaning when re-enacted and published at length was clear and unambiguous, noting the Court itself had said that if the act had been divided into "Title," "Chapters," and "Articles" each subsection could have been considered an "Article."

It is his contention that the same is not true in the case at bar; that particularly Subsection (d) of Section 3 of Article 726d, supra, purportedly amended by Section 2 of the 1967 act is not within itself a whole, complete entity whose meaning when re-enacted and published at length is clear and unambiguous; that standing alone the said subsection (d) is not a complete sentence and meaningless without resort to other statutory language. He notes that the compiler for Vernon's Annotated Penal Code in preparing the Cumulative Annual Pocket Part to Volume 2, (1968–1969) thereof had to do what the Legislature did not do in order to make the 1967 amendment understandable; that the compiler had to gratuitously insert the operative language at the beginning of Section 3 (not a part of the 1967 act) in order to give meaning to amended subsection (d).

█ Now as to the effect of our holding. The 1967 act here in question contained no severability clause. There can be no question that the entire 1967 act falls, but Article 726d, supra, as enacted in 1959 and as amended in 1965 (Acts 1965, 59th Leg., p. 971, ch. 466) remains in full force and effect. See Doucette v. State, 166 Tex.Cr.R. 596, 317 S.W.2d 200.

For the reasons stated, the judgment is reversed and the prosecution is ordered dismissed.