Ex parte Bernard Eugene CRISP, Jerry Michael Miles and Joe Lee Sewell, Appellants,

v.

The STATE of Texas, Appellee.

Ex parte Bruce Dudley CARTER, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 3–82–072–CR, 3–82–073–CR.

Court of Appeals of Texas, Austin.

Nov. 24, 1982.

Discretionary Review Granted Jan. 12, 1983.

Dick DeGuerin, Houston, Charles O. Grigson, Austin, for appellants.

Charles D. Houston, Dist. Atty., Bellville, for appellee.

Before PHILLIPS, C.J., and SMITH and BRADY, JJ.

SMITH, Justice.

This case requires us to consider the constitutionality of a bill amending the Texas Controlled Substances Act. Tex.Rev.Civ. Stat.Ann. art. 4476–15 (Supp.1982). A pre-conviction application for writ of habeas corpus was filed with the trial court by these four appellants, who were jointly indicted for possession of marijuana. The court denied the writ. Three appellants challenge that action in one appeal; a fourth appeals separately. We will consider both appeals together.

Bernard Eugene Crisp, Jerry Michael Miles, Joe Lee Sewell, and Bruce Dudley Carter were charged by an indictment

which reads, in pertinent part, that each man:

did then and there knowingly and intentionally possess a usable quantity of marijuana of MORE THAN 2,000 (two thousand) pounds . . . .

On the same page as the indictment, but not a part thereof, the offense charged is described as, "AGGRAVATED POSSESSION OF MARIJUANA Sec. 4.051." Appellants posted bond, and each remains in the constructive custody of the Fayette County Sheriff.

In May, 1981, the Legislature passed, and the Governor signed, House Bill 730[1] which added section 4.051 to the Controlled Substances Act and created the new offense of aggravated possession of marijuana. That bill substantially amended the act in many other respects. The sole contention in appellants' application for writ of habeas corpus concerns whether the caption to H.B. 730 violates Tex.Const.Ann. art. III, § 35 (1955). Specifically, appellants contend that the caption fails to give adequate notice of the major changes in Texas law that were contained in the body of that bill. Accordingly, they argue that H.B. 730 is unconstitutional. We agree.

■■■ A statute, alleged to violate the constitution, properly may be challenged through application for writ of habeas corpus. *Ex parte Matthews*, 488 S.W.2d 434 (Tex.Cr.App.1973); *Ex parte Meyer*, 172 Tex.Cr.R. 403, 357 S.W.2d 754 (1962). If there is no valid statute under which the applicant may be charged, the relief to which he is entitled is that he be discharged. *Ex parte Psaroudis*, 508 S.W.2d 390 (Tex.Cr.App.1974).

The Controlled Substances Act, as amended by H.B. 730, is a comprehensive law that, among other things, prohibits the unlawful manufacture, delivery, or possession of a controlled substance. For this purpose, the act classifies controlled substances into four penalty groups. Tex.Rev. Civ.Stat.Ann. art. 4476–15, § 4.02 (Supp. 1982).

Before the 1981 amendments, the act provided for three levels of offense for possession of marijuana. Depending upon the quantity of marijuana possessed, an offense could have been either a third degree felony, a class A misdemeanor, or a class B misdemeanor. Since the penalties under the old act were determined by reference to Chapter 12 of the Penal Code, the maximum punishment possible was confinement for not more than ten nor less than two years, in addition to a fine not to exceed $5,000. Tex.Pen.Code Ann. § 12.34 (1974).

House Bill 730, without so stating in its caption, purported to make extensive amendments to the existing law. It has been described by one commentator, as "easily the *most comprehensive* and probably the *most significant* of all the 1981 war on drugs legislation . . . ." Wendorf, The War on Crime: 1981 Legislation, 33 Baylor L.Rev. 765 (1981). Although the bill made important and wide ranging changes in existing Texas law, the caption, in its entirety, simply provides:

AN ACT relating to offenses and criminal penalties under the Texas Controlled Substances Act.

The bill creates two levels of offense for possession of marijuana in addition to the three already in existence. The most serious of the new offenses is that created for possession of more than 50 pounds of marijuana. This is declared to be an aggravated offense, and it is under this section that appellants stand indicted.

In a departure from the uniform system of sanctions sought to be established in the Penal Code [*See* Tex.Pen.Code Ann. § 12.-01(b)], H.B. 730 created three additional levels of *punishment* for aggravated possession of marijuana. Accordingly, the maximum punishment facing these appellants is now a life sentence or not more than 99 years nor less than 15 years confinement. In addition, a fine not to exceed $250,000 may be assessed. Under pre-amendment law the most punishment that they could have received was ten years and a possible fine of $5,000.

1. 1981 Tex.Gen.Laws, ch. 268, at 696 ff.

By increasing the minimum sentence to 15 years, the bill affected Tex.Code Cr.P. Ann. art. 42.12, § 3 (Supp.1982) which permits judges to give probation in any case where the maximum sentence does not exceed ten years. Therefore, although probation for possession of marijuana was always a possibility under the pre-amendment law, H.B. 730 effectively precludes even the consideration of probation for those in appellants' situation.

For the same reason, the trial judge may no longer consider assessing punishment under the deferred adjudication section of Tex.Code Cr.P.Ann. art. 42.12, § 3d (Supp. 1982), although it was always an option under the previous law. Similarly, appellants' right to bail pending appeal could be materially affected by the amendment to Tex.Code Cr.P.Ann. art. 44.04(b). That article prohibits a judge from releasing a defendant on bail where punishment has been assessed at more than 15 years. Moreover, if it is shown that appellants are repeat offenders, with prior felony convictions, H.B. 730 amends Tex.Code Cr.P.Ann. art. 42.12, § 3f(c) to deny bail on appeal even if the punishment assessed were to be 15 years or less.

█ House Bill 730 also affects the Penal Code and corresponding evidentiary rules to be applied at trial. Section 4.011 of the amended act states that, "the provisions of Title 4, Penal Code, apply to . . . offenses designated as aggravated offenses . . . ." This title, which enumerates the preparatory offenses, specifically defines the offense of criminal conspiracy. Tex.Pen.Code Ann. § 15.02 (1974). In trials where this offense is applicable, each statement or act of a conspirator, made up until the time the object of the conspiracy is completed, is admissible—even over a hearsay objection. *Helms v. State,* 493 S.W.2d 227 (Tex.Cr.

App.1973). By incorporation of Title 4 of the Penal Code into the Controlled Substances Act, H.B. 730 substantially modified the act and the rules of evidence under which appellants may be tried.

House Bill 730 makes sweeping changes in the Controlled Substances Act. Ten new sections purportedly were created.[2] Two sections of the Code of Criminal Procedure were amended.[3] One section of the Penal Code was incorporated into the act.[4] Furthermore, the bill attempts to eliminate many sections of the old act. Portions of one section were expressly repealed.[5] Moreover, if the legislation is valid, many other sections from the previous act will be repealed by implication.[6] *Gordon v. Lake,* 163 Tex. 392, 356 S.W.2d 138 (1962).

The final section of H.B. 730 recites that, "the importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended." Such language is commonly referred to as an emergency clause. It would have been a simple matter for the caption drafter to have stated that the bill declared an emergency. Such a statement would have put a busy legislator on notice of the suspension of the rule requiring the public reading of this bill. It would have forewarned him of the importance of this bill and of the necessity that, if he were to be adequately informed of its contents before he voted on it, he would be obliged to read the entire text himself.

This is, after all, the purpose for the caption requirement in art. III, § 35. *White v. State,* 440 S.W.2d 660 (Tex.Cr.App. 1969). That section of our constitution provides that:

2. Tex.Rev.Civ.Stat.Ann. art. 4476–15, §§ 4.011, 4.012, 4.031, 4.032, 4.041, 4.042, 4.043, 4.051, 4.052, and 4.081.

3. Tex.Code Cr.P.Ann. art. 42.12, § 3f(c); art. 44.04(b) and (c).

4. Tex.Rev.Civ.Stat.Ann. art. 4476–15, § 4.011.

5. Tex.Rev.Civ.Stat.Ann. art. 4476–15, § 4.01(c) and (d).

6. Tex.Rev.Civ.Stat.Ann. art. 4476–15, §§ 4.01(b), 4.03, 4.04, 4.05, 4.12(a), 5.03(a), 5.05(a) and (b), 5.06, 5.07(b) and (d), and 5.08(a).

No bill ... shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed.

As noted herein, the subjects embraced by H.B. 730 include the Texas Controlled Substances Act (a civil statute), the common-law rules of evidence, the Code of Criminal Procedure, and the Penal Code. The caption, however, is conspicuous in its failure to reveal this.

■ We recognize the rule that the caption of an act should be liberally construed so as to uphold its validity if at all possible. *Castellano v. State,* 458 S.W.2d 73 (Tex.Cr. App.1970). However, a stricter rule of construction is to be applied in the case of captions to amendatory acts. *Bates v. State,* 587 S.W.2d 121 (Tex.Cr.App.1979); *White, supra.* House Bill 730 is largely amendatory in nature. Therefore, the critical question for determining adequate compliance with art. III, § 35 of the constitution is whether the caption puts any reasonable caption reader on notice that he will find new matter in the body of the bill. *Bates, supra; Beck v. State,* 583 S.W.2d 338 (Tex.Cr.App.1979).

A caption need not detail all the particulars contained in the body of a bill. Indeed, even a broad caption is no detriment so long as it gives *fair notice* of what is contained in the body of the law. *Atwood v. Willacy County Navigation District,* 284 S.W.2d 275 (Tex.Civ.App.1955, writ ref'd n.r.e.). However, a caption may not be so general or inaccurate as to throw off guard or mislead the reader concerning the significance of the law. *Atwood, supra; De Silvia v. State,* 88 Tex.Cr.R. 634, 229 S.W. 542 (1921).

■ A fair reading of this caption could not possibly put anyone on notice of the many drastic additions, deletions, and changes in Texas law that are contained in H.B. 730. It is difficult for this Court to

conceive of any language more ambiguous and misleading than that contained in the caption to this bill. Witness its failure to even mention the Code of Criminal Procedure or the Penal Code.[7] We hold that the caption to H.B. 730 is so vague and general that it fails to inform any interested reader of the many substantive revisions of Texas law contained therein.

Whether one agrees or disagrees with the goals sought to be advanced by a legislative bill is not the test of its validity. The constitution is our talisman, and we are bound by it. Three of the most learned judges ever to sit on the Court of Criminal Appeals wrestled with a similar problem in *Ex parte Heartsill,* 118 Tex.Cr.R. 157, 38 S.W.2d 803 (1931). There, a bill punishing men who deserted their wives and children was held to violate art. III, § 35. Judge Lattimore wrote:

To the mind of an interested public or Legislature, whether in favor of or against such law, but who might derive their knowledge of the purport or content of the amendatory bill from perusal of its title or caption, there might be much difference of attitude toward a bill which purported to make a felon of one who deserted his wife or children in destitute and necessituous circumstances, from what it would be toward such bill if its manifest purpose was to thus punish one who left them with opulent relatives, friends, or abundment means of support .... The bill ... went beyond the express limitation of its caption, and under our Constitution and authorities this destroyed its effectiveness as a law.

We endorse the efforts by the Legislature to combat crime in the proposed legislation; however, it must abide by the constitutional mandate in doing so.

■ A question remains as to the validity of those provisions of the Controlled Substances Act which the Legislature sought to amend through H.B. 730. It is the general rule that an invalid or unconstitutional act cannot repeal a valid statute.

---

**7.** Compare the captions from similar amendatory acts that were challenged in *Turnipseed v. State,* 609 S.W.2d 798 (Tex.Cr.App.1980);

*Bates, supra; Beck, supra; Putnam v. State,* 582 S.W.2d 146 (Tex.Cr.App.1979); and *White, supra.*

Moreover, where an amendment to an act is declared invalid, the original act remains in full force and effect. *Rowland v. State,* 166 Tex.Cr.R. 118, 311 S.W.2d 831 (1957); *see also White, supra; Ex parte Heartsill, supra.*[8] Since a void act can repeal nothing, the Controlled Substances Act stands as though H.B. 730 had never existed.

█ Having held the amended act unconstitutional, we must determine whether appellants are entitled to the relief they seek. The indictment in this case states an offense under the pre-amendment version of the act.[9] The instrument alleges the quantity of marijuana possessed by appellants as being more than four ounces (more than 2,000 pounds). This clearly alleges a third degree felony offense under the law as it existed before the passage of H.B. 730.

Since our decision is that appellants have been validly indicted under the pre-amendment version of the Controlled Substances Act, the order of the trial court denying the writ of habeas corpus is affirmed. *Ex parte Heartsill, supra.* Appellants shall remain in constructive custody of the Fayette County Sheriff to stand trial under that law.

---

8. Appellants argue that H.B. 730 contains neither a severability clause nor a savings provision. They contend, therefore, that the prior law is invalid, and that the writ should be granted discharging them from custody. Section 19 of H.B. 730 contains a savings provision. Furthermore, appellants misconstrue both the purpose and the nature of savings provisions. A savings clause merely preserves the validity of a repealed law for offenses committed before the effective date of an amendment. *See* Ruud, The Savings Clause—Some Problems in Construction and Drafting, 33 Tex. L.Rev. 285 (1955). The offenses for which appellants are charged were allegedly committed after the date on which H.B. 730 was to take effect.

9. If an applicant for writ of habeas corpus is charged by an indictment that is valid under either one law or its amended version, it may plausibly be argued that the reviewing court can deny the writ without deciding which act is the valid one, leaving it up to the trial court to decide this highly important question. We reject this approach for several reasons. First, it is contrary to the precedent of the Court of Criminal Appeals. *Ex parte Heartsill, supra; see also Ex parte Matthews, supra.* Second, such a holding would only confuse trial judges and practicing attorneys. In resolving the narrowly drawn legal issues before it, the proper role of an appellate court is to illuminate relevant judicial principles and not to obscure them. Third, any decision suggesting, but not holding, that one act or the other is invalid clogs the appellate process by inviting the filing of additional applications for writ of habeas corpus. Fourth, it is obvious that we must at some time pass upon this question. Why wait until the appellate dockets are inundated with cases raising this issue? Fifth, and finally, by ruling without delay we invite a speedy legislative correction of the defects in this act.