Billy Jack BAGGETT, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–83–027 CR.

Court of Appeals of Texas,
Beaumont.

March 28, 1984.

**910**

Carl Parker, Port Arthur, for appellant.

John R. DeWitt, Asst. Crim. Dist. Atty., Beaumont, for appellee.

## OPINION

BROOKSHIRE, Justice.

Two informations filed in the County Court of Jefferson County at Law presented that the Appellant, who was required to hold a Texas Finfish Import License, had unlawful packages of imported fish. The first information charged that he knowingly possessed a package of imported Speck-

led Sea Trout, not being identified as to the contents as required by TEX. PARKS & WILD. CODE ANN., Sec. 66.201(h) (Vernon Supp.1984) and Parks & Wildlife Dept., 31 TEX.ADMIN.CODE, Sec. 57.373 (Shepard's May 1, 1982) (Imported Redfish and Speckled Sea Trout). The second information charged the same offense concerning a package of imported Redfish. An additional (third) complaint was filed in the Justice of the Peace Court, Precinct No. 2, Jefferson County, charging Appellant with refusing to allow an employee of the department to inspect aquatic products in the possession of a wholesale fish dealer, referring to TEX.PARKS & WILD. CODE ANN., Sec. 47.037 (Vernon 1976).

The offenses, consolidated for trial, were that Appellant, a wholesale fish dealer, intentionally and knowingly possessed a package or packages of imported redfish (sciaenops ocellata) and speckled sea trout (cynoscion nebulosus) which were not identified as to contents; and that he refused to allow an employee of the Texas Parks and Wildlife Department inspection of aquatic products.[1] Even though in the bench trial of the case the prosecution argued for the maximum fine only (urging that the crime was economic as opposed to violent), the court assessed not only a one thousand dollar fine but also thirty days in jail on each of the two offenses of "possession" and the maximum two hundred dollar fine on the offense of "refusal".

Officers of the Texas Parks and Wildlife Department testified that on May 3, 1982, they made a surprise inspection of Appellant's place of business, a fish market or fish house, on College Street, Beaumont. Appellant was a licensed Finfish dealer. The officers first checked the display cases and saw no speckled sea trout or redfish. They then went to a cooler built on the back of the building and there found assorted aquatic products, including shrimp

---

1. "Possession", as used herein, refers to the Class A misdemeanor offense under TEX. PARKS & WILD. CODE ANN. Sec. 66.201(g) and (h) (Vernon Supp.1984); TEX.PARKS & WILD-LIFE DEPT., Title 31, TEX.ADMIN.CODE, Sec-

tions 57.371 through 57.375 (Shepard's 1982) (Imported redfish and speckled sea trout). "Refusal" refers to the Class C misdemeanor offense under TEX.PARKS & WILD. CODE ANN. Sec. 47.037 (Vernon 1976).

and fish. Upon further inspection they found three wooden "shrimp crates" filled with iced redfish. The crates had package labels on them but the labels did not contain invoice numbers.[2] The officers then proceeded to a refrigerated truck outside the premises and there found only gar, catfish and buffalo, but no speckled sea trout or redfish. Inspection was also made of a small building and there no specks or reds were found. Appellant acquiesced, the officers said, to search of each of the aforementioned places. The officers then proceeded to a large building on the west side of the main premises of the fish house. Approximately one half of this building is utilized for a garage, while the other half contains a large freezer. The large freezer was padlocked, officers testified, and they reported that Appellant declared he would have to get the key. Appellant's words and acts seemingly implied consent to inspect. The officers said they waited for approximately two and a half hours, until about 6:00 p.m., for various persons to appear who were said to have the key, but to no avail. Finally, an attorney of Appellant appeared, identified himself, and told the officers he had advised his client to *refuse the search unless the officers obtained a warrant.* Thereupon, the officers arrested Appellant for refusal to allow inspection. They then attempted to take him before a magistrate in Beaumont but none were available and so they took Appellant before a justice of the peace in Port Arthur. Eventually, a search warrant was obtained and the large freezer was opened under authority of the warrant. Inside, the officers found specks and reds packed in waxed cardboard boxes. The boxes had no labels on them.[3] The agents said they were unable to determine whether the fish were imported from other states or were "native fish without any paperwork". An employee of Appellant, however, did show the officers some invoices tending to indicate that the fish were imported. The officers estimated that approximately one thousand pounds of specks and reds were seized.[4]

Before reaching the point of reversal in this case, we will address Appellant's other grounds of error.

Appellant's first ground of error advances that the caption or title to the statute in question "violates Article 3, Section 35 and Article 3, Section 36 of the Texas Constitution because of a faulty caption".[5] The caption or title in question reads:

"An act relating to sports and commercial activities involving redfish and speckled sea trout; providing penalties." Act of May 19, 1981, Ch. 153, H.B. 1000, 1 General and Special Laws, Texas, 67th Legislature—Regular Sess. 1981, page 374.

The allegedly faulty caption, Appellant says, fails to give notice to the public and to legislators of the changes in existing laws.

We hold: TEX. CONST. Art. III, Sec. 36 has not been violated by the caption in question. The purpose of this constitutional provision, we believe, was to prohibit the practice of amending a statute by referring to its title and then providing that it should be amended by striking out or deleting certain words and phrases and then

---

**2.** *See 31 TAC Sections 57.372(d)(2)(A) and 57.-373(b)(1).*

**3.** *See 31 TAC Sec. 57.373(A).*

**4.** Between forty and seventy "legal" gulf trout were seized by the officers who said they mistakenly believed them to be specks.

**5.** TEX. CONST. Art. III, Sec. 35, provides in pertinent part:

"No bill ... shall contain more than one subject, which shall be expressed in its title...."

TEX. CONST. Art. III, Sec. 36, provides:

"No law shall be revived or amended by reference to its title; but in such case the act revived, or the section or sections amended, shall be re-enacted and published at length."

Quoted in Appellant's brief is the following from the interpretive commentary:

"The evil designed to be remedied by this mandate was the passage of amendments so blind that the legislators could be deceived in regard to their effect."

inserting new words and phrases. A bill or statute, in other words, should be re-enacted and published at length when amended. The statute in question does not attempt to do such and so Art. III, Sec. 36, is not applicable.

■ We further hold: the caption to the subject statute meets the criteria of TEX. CONST. Art. III, Sec. 35, and is not unconstitutional. The caption in question gives notice regarding each and every sports and commercial activity involving redfish and speckled sea trout, and puts a reasonable caption reader, legislator or member of the public, on notice regarding the matters and penalties included therein. In *White v. State*, 440 S.W.2d 660 (Tex.Cr.App.1969), it was noted, at 664, that the purpose of the provision was to "give fair notice within itself and a reading must reasonably forewarn of the subject of the statute". The court further reasoned at 665:

"It has been consistently held that in determining its [Sec. 35] application, the caption or title of the act should be liberally construed so as to uphold its validity rather than giving the act a strict construction which would lead to striking down the act or a part thereof."

In *Bates v. State*, 587 S.W.2d 121 (Tex. Cr.App.1979), the court said, at pages 128 and 129:

"The critical question for determining adequate compliance with Article III, Section 35, of the Texas Constitution is whether the caption 'put any reasonable caption reader on notice that he will find new matter in the body of the bill.' *Ex Parte Jimenez*, 159 Tex. 183, 317 S.W.2d 189 (1958)...."

Appropriate is the reasoning of *Clark v. Finley*, 93 Tex. 171, 54 S.W. 343 (1899), wherein the court reaffirmed an earlier case, at 344, stating:

" 'It is not meant by this provision that every act which amends the statutory law shall set out at length the entire law as amended....' "

From *Smith v. Davis*, 426 S.W.2d 827 (Tex.1968), at 833, we quote:

"The purpose of a title is to give a general statement of, and call attention to, the subject matter of an act, so that the legislators may be apprised of the subject of the legislation. With amendatory bills, it is settled that reference to the act or section to be amended is adequate, as long as the subject matter of the amendment is germane ...."

In the well reasoned case of *State, Etc. v. Tex. Mun. Power Agency*, 565 S.W.2d 258 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ), we find, at 272:

"Section 35 of Article 3 of the Constitution is given a liberal rather than a strict construction. *Central Education Agency v. Independent School District of City of El Paso*, 152 Tex. 56, 254 S.W.2d 357 (1953). It is not necessary that the caption of an amendatory bill apprise the reader of the precise effects of the body of the bill, so long as the general subject of the amending bill is disclosed. [Citing *Smith v. Davis, supra*.]"

We believe that the subject statute and its caption meet the criteria for constitutionality as set forth in the referenced cases.

Appellant relies on *Crisp v. State*, 643 S.W.2d 487 (Tex.App.—Austin, 1982, pet. granted), and *Crisp v. State*, 661 S.W.2d 944 (Tex.Cr.App.1983). *See and compare Bass v. State*, 666 S.W.2d 113 (Tex.App.—Beaumont, 1982, disc. rev. granted). *See and compare also Bass v. State*, 661 S.W.2d 954 (Tex.Cr.App.1983), and *Ex Parte Crisp, Miles, Sewell, Carter and Bass*, 661 S.W.2d 956 (Tex.Cr.App.1983). In *Crisp*, attack was made on the caption of the (then) new Texas Controlled Substances Act which became effective September 1, 1981. That caption, which failed constitutional muster, stated the act related to offenses and criminal penalties *but did not identify the controlled substances contained therein*. Our case is different because the caption in question speaks of *sports and commercial activities involving redfish and speckled sea trout* and provides penalties. Inasmuch as the caption in question specifies, of all the fishes in the sea, which species fall within the

statute, and which activities of mankind involving the fish are affected, the test in *Crisp, supra,* is satisfied.

We note that the facts of the record before us deal directly with commercial activities pertaining to redfish and speckled sea trout. Such activities are specifically mentioned in the caption and statute. We believe this concept is important, given the wording of TEX. CONST. Art. III, Sec. 35, which declares:

> "But if any subject shall be embraced in any act, which shall not be expressed in the title, such act *shall be void only as to so much thereof, as shall not be so expressed.* (emphasis added)

Moreover, in several cases including those relied upon by Appellant, different tiers of punishment were provided, or different treatment in punishment was given for 'aggravated' possession. Caption notice, in such a case, would be an important element for determining constitutionality. *See Crisp, supra.* Here, we do not have additional tiers of punishment. Moreover, House Bill 1000 is about 6¼ pages in the General and Special Laws of the 67th Legislature, Regular Session, 1981. House Bill 1000 can be read in 30 minutes or more. It is not a complicated, complex statute.

The first ground of error is overruled.

■ In ground of error two, Appellant complains of TEX. PARKS & WILD. CODE ANN., Sec. 47.037 (Vernon 1976), which reads:

> "No person may refuse to allow an employee of the department to inspect aquatic products handled by or in the possession of any ... wholesale fish dealer ... at any time or in any place."

Appellant contends the section violates the fourth and fourteenth amendments to the United States Constitution as well as TEX. CONST., Art. I, Sec. 9. Appellant's briefing on this point approaches the issue as if the search conducted was of a private residence, which was not the case. Appellant also cites *Nesloney v. State,* 653 S.W.2d 582 (Tex.App.—Houston [14th Dist.] 1983). Petition for discretionary review has been

granted in *Nesloney, supra,* and as of the date of this opinion, the Court of Criminal Appeals has not passed upon the matter. *Nesloney, supra,* is also distinguishable because it dealt with a private residence, although the 14th Court held the entire statute to be unconstitutional. In our opinion, we decline to declare this entire statute unconstitutional. In the instant case, the arrest and warrant to search were based on "refusal to allow inspection". If the "refusal" part of the statute should be held unconstitutional, then there would be no misdemeanor offense for refusing inspections. The Legislature certainly is empowered to create this crime. Our Court of Criminal Appeals, however, has recently upheld similar statutes relating to inspection of pawn shops. *Kipperman v. State,* 626 S.W.2d 507 (Tex.Cr.App.1981). We also note the general proposition that:

> "The state has the widest powers over the taking and handling of fish and game within its borders. Indeed, the power of the state to regulate and control the taking of fish and to regulate or prohibit the sale of fish when taken has been said to be absolute...." *25 Tex.Jur.2d, Fish and Fisheries, Sec. 7,* page 379 (1961).

According to *Kipperman, supra,* whether an industry is deeply rooted in regulation is an important criterion in determining validity of statutes such as the one at hand. Historically, the fishing industry has been deeply rooted in regulation and we sanguinely find the subject statute is constitutional. As applied factually in this case, the challenged statute is constitutional. This business was a closely, pervasively regulated one, licensed by the State. These delectable, succulent fishes were ferae naturae, belonging to the people. The state—its people, being the sovereign owners—may grant the required license upon what conditions it reasonably pleases. Ground of error two is overruled.

■ Contention is made in ground of error three that *31 TAC Sec. 57.371* through *Sec. 57.375,* exceeds the authority granted by the legislature to the Texas Parks and Wildlife Commission. We disagree. See *Solis v. Miles,* 524 F.Supp. 1069.

We also do not agree with Appellant that these regulations violate TEX.CONST. Art. I, Sec. 28, which reads:

"No power of suspending laws in this State shall be exercised except by the Legislature."

Ground of error three is overruled.

■ Ground of error four advances that TEX. PARKS & WILD. CODE ANN., Sec. 66.201 (Vernon Supp.1984) and 31 T.A.C. Sec. 57.373 violate due process of the fourteenth amendment of the United States Constitution. We believe the regulations in question, as applied, are not arbitrary or capricious and have legitimate reason and utility in enforcement of legislative enactments. *See Bullock v. Hewlett-Packard Co.*, 628 S.W.2d 754 (Tex.1982). Ground of error four is overruled.

■ In ground of error six Appellant says the informations in the offenses of "possession" are fundamentally defective, referring to TEX.CODE CRIM.PROC. ANN. Articles 21.04, 21.11, 21.21 and 21.23 (Vernon 1966). Upon review of the subject informations, we believe they are not fundamentally defective. Appellant also takes the position that the State should have described the manner in which the packages of fish were packaged or misidentified as to the contents and the State should have set forth which requirements of certain sections of the Texas Administrative Code were lacking. Attacks such as these are not jurisdictional matters; they may be the proper subject for a motion to quash the informations. Quashal motions were not filed by Appellant. *See Parr v. State*, 575 S.W.2d 522 (Tex.Cr.App.1978); *Boney v. State*, 572 S.W.2d 529 (Tex.Cr.App.1978). *See also Drumm v. State*, 560 S.W.2d 944, 946 (Tex.Cr.App.1977). Ground of error six is overruled.

Ground of error seven, which complains that 31 TAC Sec. 57.351 and Sec. 57.375 violate TEX. PARKS & WILD. CODE ANN. Sec. 61.054 (Vernon Supp.1984), is without merit and is overruled; the proclamation is addressed to a different chapter and activity. We believe also ground of error eight, in which Appellant complains

the judgment was fundamentally defective, is without merit, but we need not pass upon this point because of the reversal and remand of this case.

Turning to the fifth ground of error, we agree that Appellant was denied reasonably effective assistance of trial counsel as guaranteed by the sixth and fourteenth amendments of the United States Constitution and TEX. CONST. Art. I, Sec. 10. In his brief, Appellant brings forward approximately forty alleged deficiencies. They include: waiver of jury trial; failure to file or urge certain motions in limine; failure to file or urge quashal or suppression motions; failure to move or urge motions to the second count of the "possession" indictments for failure to state an offense; failure to object to the search following what was alleged to be a questionable search warrant and affidavit; evidence elicited by the defense counsel which tended to reinforce the state's case; the urging of a defense to the "refusal of inspection" information based solely on grounds that an ice machine was broken; questions of defense counsel to Appellant going to prior arrests that did not result in conviction, and, finally, that no evidence of Appellant's character or reputation was tendered at punishment phase.

■ Without agreeing with Appellant's position on each and every point in the forty-odd alleged deficiencies, we do believe—reluctantly—that a number have weight and substance. The adequacy of the trial attorney's services must be gaged and measured by the totality of representation. *Mercado v. State*, 615 S.W.2d 225 (Tex.Cr.App.1981); *Satillan v. State*, 470 S.W.2d 677 (Tex.Cr.App.1971). In viewing this case, we do not judge by hindsight. *Ex Parte Prior*, 540 S.W.2d 723 (Tex.Cr. App.1976). In our holding, we recognize that no one is entitled to errorless counsel but base our decision on the cumulative effect of many deficiencies. *Mercado v. State, supra; see also Ex Parte Duffy*, 607 S.W.2d 507 (Tex.Cr.App.1980).

REVERSED AND REMANDED.